UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHANNON HAMNER<br><br>Plaintiff,<br><br>vs.<br><br>TUSCALOOSA COUNTY SCHOOL SYSTEM, WALTER DAVIE, ALLISON MAYS AND CLIFTON HENSON<br><br>Defendants. | Civil Action Number<br>**2:18-cv-01838-AKK** |

## MEMORANDUM OPINION AND ORDER

Shannon Hamner initiated this action against her former employer, the Tuscaloosa County School System ("TCSS"), and three of its employees, Walter Davie (Superintendent), Allison Mays (Human Resources Director), and Clifton Henson (a middle school principal). Hamner asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., Section 1981 of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981, and Alabama state law, for alleged sexual harassment. Doc. 1. Before the court are the Defendants' motions to dismiss, docs. 5, and 8, which Chief Magistrate Judge John E. Ott converted to motions for summary judgment, doc. 10. The motions are fully briefed and ripe for review, docs. 6, 8, 14, 15, 18, and 19, and are due to be granted in part.

## I. STANDARD OF REVIEW[1]

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. When evaluating a motion brought under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'"

---

[1] Judge Ott converted TCSS's motion to dismiss into a motion for summary judgment because TCSS attached a host of exhibits to its motion. Doc. 10. However, the extrinsic evidence the parties filed addresses the timeliness of Hamner's Title VII claims and the sufficiency of service. *See* docs. 5 at 4-25; 15-1; 15-2; 15-3. As such, the court will apply the summary judgment standard to these two issues only, and the Rule 12(b)(6) standard to the remainder of the motions.

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, the complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id. See also Twombly*, 550 U.S. at 555.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). However, "mere

conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Hamner worked for TCSS from 1988 until her discharge in 2017. Docs. 1 at 4; 1-1. This is Hamner's second lawsuit against TCSS for alleged sexual harassment. Doc. 1 at 5-6. Hamner contends that TCSS began retaliating against her during her first lawsuit, Hamner I, and that the retaliation continued thereafter. *Id.* at 6-7. After resolving Hamner I, Hamner transferred to a different school, and she alleges that Henson, the school's principal, sexually harassed her by stalking her, engaging in sexually inappropriate conduct, denigrating women, and "put[ting] his hand on her without her consent and with a suggestive look on his face." *Id.* at 9-12. After Hamner reported the conduct to Mays, the Defendants launched a purported pretextual investigation, placed Hamner on administrative leave, and then discharged her in retaliation. *Id.* at 17-21.

4

After her discharge, Hamner filed an EEOC charge, alleging sex discrimination and retaliation. Doc. 1-1. The EEOC dismissed the charge and issued a right-to-sue letter dated August 1, 2018, informing Hamner that she had ninety days to file a lawsuit. Doc. 1-2. In pre-litigation correspondence with counsel for TCSS, Hamner's counsel represented that the ninety-day limitation period expired on November 2, 2018, and asked that TCSS agree to toll the statute to allow Hamner thirty additional days to file suit. Doc. 5 at 19-20. When TCSS declined to do so, Hamner's counsel stated that he had mistakenly calculated the date, that the deadline to file was actually three days later, and filed this lawsuit accordingly. *Id.* at 22-24; doc. 1.

Apparently, after filing her lawsuit, Hamner waited until three days before the expiration of the time limit for service set forth in Rule 4(m) to serve TCSS, Davie, and Mays. That day, Ronald White, a process server for Hamner, visited TCSS's central office to deliver the summons and complaint to these three defendants. Doc. 15-3 at 2. Allegedly, after White explained to the receptionist, Billie Davidson, that he needed to see Davie and Mays, Davidson referred White to Davie and Mays' assistant, Dana Fisher. *Id.* For her part, Davidson attests that White approached her initially about becoming a teacher, and then explained that he actually had a subpoena to deliver. Doc. 5 at 10. Davidson adds that White informed her that he did not know the individuals to whom he needed to deliver the subpoenas, and that

5

she directed White to Fisher in the Human Resources office after White informed her that the subpoenas were for employee records. *Id.* at 10-11. Davidson claims that White never mentioned Davie or Mays specifically. *Id.* at 11.

Thereafter, when White arrived at Fisher's office, White asked to see Davie and Mays, and Fisher explained that White could not see Davie and Mays and then offered to take the documents to them. Doc. 15-3 at 2. White gave the documents to Fisher, who was purportedly in a position to see and read the summons addressed to TCSS via Davie and to both Davie and Mays individually. *Id.* For her part, Fisher claims that White entered her office and asked her to help him become a teacher. Doc. 5 at 14. When she explained that her office did not do academic advising, White explained he was joking and handed her a stack of papers, saying that they were for Davie and Mays. *Id.* Allegedly, White never asked to see Davie and Mays or inquired about their availability. *Id.* In any event, later that afternoon, Fisher gave Davie the papers from White, and informed Mays, who was out of the office, by email about the summons. *Id.* at 8, 17. Mays received the summons when she returned to the office a day after the expiration of the ninety-day period to perfect service. *Id.* at 17.

## III. ANALYSIS

The Defendants have moved to dismiss, arguing that (1) the Title VII claim is time-barred,[2] (2) this Court lacks jurisdiction over TCSS, Davie, and Mays due to improper service of process, (3) Hamner cannot state a claim under § 1981, (4) Hamner's battery claim is barred by sovereign immunity, and (5) venue is not proper in this division. Docs. 6 and 8. The court addresses each contention in turn.

### A. <u>Title VII Claims—Counts I, II, and III</u>

TCSS argues that Hamner's Title VII claims are barred by the statute of limitations. When, as here, "the EEOC issues the employee a right-to-sue letter, the employee must file a complaint within 90 days of the receipt of the . . . letter." *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004) (citation omitted). If the date of receipt is in dispute, the court applies "a presumption of three days for receipt by mail, akin to the time period established in Fed. R. Civ. P. 6(e)." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 953 n.9 (11th Cir. 2005) (citation omitted). Absent any evidence to the contrary, the court presumes the EEOC mailed the right-to-sue letter on the date shown in the letter. *Lamar v. Wells Fargo Bank & Co.*, 2 F. Supp. 3d 1202, 1209 (N.D. Ala. 2014), reversed on other grounds, 597 F. App'x 555

---

[2] The Individual Defendants also challenge the Title VII claim, doc. 8 at 4, contending correctly that "relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act . . . ." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006). The Title VII claims against the Individual Defendants, if any, are due to be dismissed.

7

(11th Cir. 2014). A plaintiff, however, can rebut this presumption by offering the envelope with the return address of the EEOC and a postmark showing a later mailing date. *See Martinez v. City of Birmingham*, No. 2:18-CV-0465-JEO, 2018 WL 5013861, at *2 (N.D. Ala. Oct. 16, 2018).

At issue here is TCSS's contention that the ninety-day period expired on November 2, 2018—a deadline determined by presuming notice of receipt three days after the mailing date listed in the right-to-sue letter. Doc. 6 at 3. Hamner counters that the postmark on the right-to-sue letter's envelope (August 3, 2018) indicates the correct mailing date, and that the court should presume she received notice three days later. Doc. 15 at 4-5. Based on the postmark, this circuit's presumption of three days for receipt by mail, and Rule 6(a)(3)(A)'s automatic next-day extension for deadlines that fall on a weekend, Hamner is correct, and the court finds that she timely filed her Title VII claim.[3]

### B. **Whether Hamner Properly Served the Defendants**

The Defendants argue next that Hamner failed to properly serve TCSS, Davie, and Mays when her process server delivered the documents to a person who was not

---

[3] TCSS challenges this straightforward finding by contending that Hamner failed to offer proof that she received the right-to-sue letter after August 4, 2018, the date the envelope indicates the letter was processed, and that Hamner's attorney's statements indicating an earlier date of receipt undermine her contentions. Doc. 18 at 2-3. TCSS's speculation, however, does not prevail over the concrete evidence of the envelope's postmark and the presumption of receipt three days after the mailing date. Moreover, statements made by Hamner's attorney in a pre-litigation email have limited persuasive weight in light of counsel's attempts to correct the alleged misstatement.

8

authorized to receive process on their behalf. Docs. 6 at 5-10; 8 at 1–4. In general, "the rules [regarding service of process] are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice," and the court looks at various factors to ensure that the service is fair in light of all the surrounding circumstances. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Those factors include whether the individual served "'stands in such a position as to render it fair, reasonable and just to imply the authority on h[er] part to receive service,'" actual receipt of process by the correct person, and the timing of that receipt. *See id.* But, "before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant . . . ; [t]here also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). In other words, a defendant's actual notice is "not sufficient to cure defectively executed service." *Albra v. Advan*, *Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (citations omitted). And, when a defendant contests the sufficiency of service, the plaintiff bears the burden of proving proper service. *Davis v. Country Cas. Ins. Co.*, 2013 WL 3874709, at *3 (N.D. Ala. July 25, 2013).

1. Service on TCSS

Service for TCSS, a local agency of the State of Alabama, is governed by Rule 4(j)(2) of the Federal Rules of Civil Procedure, which states that service is proper when either (1) a copy of the summons and complaint is delivered to a state-created governmental organization's chief executive officer or (2) a copy is served in a manner prescribed by state law. Fed. R. Civ. P. 4(j)(2). Alabama law allows service on governmental entities by serving (1) the CEO, (2) the clerk, or (3) another person designated by appointment or by statute to receive service of process. Ala. R. Civ. P. 4(c)(8). Based on these rules, service on Fisher and her subsequent delivery of the summons to Davie, while providing actual notice, does not satisfy Rule 4(j) or Alabama Rule 4(c)(8)'s requirement of personal service on TCSS's CEO. *Id.* And, Hamner has not furnished any evidence to suggest that Fisher qualified as "the clerk" for purposes of receiving service or was designated by appointment or statute to receive service on behalf of TCSS. *See* Ala. R. Civ. P. 4(c)(8). Accordingly, Hamner has not met her burden of proving proper service on TCSS.

2. Service on the Individual Defendants

Service on an individual may be effected by delivering a copy of the summons and complaint to the individual personally, to "an agent authorized by appointment or by law to receive service of process," or, under prescribed conditions, by leaving copies at the individual's usual place of abode. Fed. R. Civ. P. 4(e)(2). Based on

this record, Hamner failed to properly serve Davie and Mays within the time allowed, as there is no evidence that Fisher had authorization to act as an agent for either defendant, a point Hamner concedes as it relates to Mays.[4] Doc. 15 at 15.

### 3. The court's authority to extend the time for service

Although Hamner failed to properly serve the defendants within ninety days, the court "must extend the time for service for an appropriate period" if Hamner shows good cause. Fed. R. Civ. P. 4(m). In addition, the court may extend the time for perfecting service even in the absence of good cause, and the Advisory Note to Rule 4(m) provides guidance as to what factors may justify the grant of an extension of time absent a showing of good cause: "'Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.'" *Horenkamp v. Van Winkle and Co.*, 402 F.3d 1129, 1132-33 (11th Cir. 2005) (quoting Fed. R. Civ. P. 4(m), Advisory Committee Note, 1993 Amendments). Other relevant considerations include whether the defendant had notice of the suit or received proper service after the deadline. *Id*. at 1133.

Hamner attributes her failure to perfect service in part on Fisher's allegedly deceptive assurances that she would deliver the documents directly to Davie and

---

[4] Hamner notes correctly that she eventually properly served Mays. Doc. 15 at 15. Consistent with the court's authority to extend the time for service, *see* section(III)(B)(3), *infra*, the court finds that Hamner has properly served Mays.

11

Mays for White, and on Fisher's failure to inform White that Mays was out of the office. At best, Fisher's conduct may explain Hamner's failure to serve those defendants on the last three days of the deadline. However, it does not explain the failure to serve them previously or why the process server Hamner used is unfamiliar with the proper service procedures. But, while the facts here fall short of establishing good cause, an extension of time to perfect service under Rule 4(m) is warranted as it is "incumbent upon the district court to at least consider" the impact of the statute of limitations before dismissing a case without prejudice under Rule 4(m). *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007). In that respect, in light of the statute of limitations, an order dismissing Hamner's claims would effectively bar her Title VII claim. Therefore, in lieu of dismissal, the court will give Hamner instead until July 19, 2019 to perfect service on TCSS and Davie.

### C. Section 1981 Retaliation Claims—Count IV

TCSS argues also that Hamner cannot sue the school board, an arm of the state, under § 1981. Doc. 6 at 11. Indeed, plaintiffs must bring claims for § 1981 violations against a school board pursuant to § 1983. *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008); *Butts v. County of Volusia*, 222 F.3d 891, 892-94 (11th Cir. 2000). As such, Hamner improperly framed the statutory basis for her retaliation claim against TCSS. Still, in lieu of outright dismissal, the court generally must grant Hamner leave to amend to plead her § 1981 retaliation

12

claims against TCSS under § 1983,[5] unless the amendment would be futile, *see Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). The court must therefore consider whether Hamner has alleged plausible retaliation claims.

      1.      <u>Retaliation Claim Against TCSS</u>

To state a plausible retaliation claim, Hamner must allege facts demonstrating that she engaged in statutorily protected activity, she suffered an adverse action, and show a causal connection. *See Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1193–94 (11th Cir. 2016). For purposes of § 1981, an employee engages in statutorily protected activity when she opposes race discrimination. *Tucker v. Talladega City Sch.*, 171 F. App'x 289, 294 (11th Cir. 2006) (citing *Pinkard v. Pullman–Standard,* 678 F.2d 1211, 1229 (5th Cir. Unit B 1982). An employee's complaint of race discrimination constitutes protected activity if the employee could "reasonably form a good faith belief that the alleged discrimination existed," *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir. 1999), which requires "evidence showing that her belief that she suffered race discrimination was objectively reasonable," *McQueen v. Wells Fargo*, 573 F. App'x 836, 840 (11th Cir. 2014).

---

[5] *See Smith v. Vestavia Hills Bd. of Educ.*, 218 F. Supp. 3d 1285, 1290 (N.D. Ala. 2016). *See also King v. Butts Cnty. Ga.*, 576 F. App'x 923, 931 (11th Cir. Aug. 13, 2014) (finding grant of summary judgment was error when improperly pled § 1981 claim gave defendant sufficient notice of plaintiff's underlying § 1983 claim); *Brown v. Huntsville City Bd. of Educ.*, 324 F.R.D. 239, 252 (N.D. Ala. 2018).

13

At issue here is whether Hamner's race discrimination claims in Hamner I triggered the adverse employment actions in this case, and, consequently, her gender-based retaliation claim in this case is cognizable under § 1981. Doc. 15 at 21. Thus, to determine if Hamner engaged in statutorily protected activity, the court must determine whether it was objectively reasonable for Hamner to believe that § 1981 embraces race-based sexual harassment and disparate treatment claims similar to the claims she brought in Hamner I. *See Hamner v. Pruitt, TCSS, et al.*, No. 7:15-cv-00925-JHE, Doc. 1 ¶¶ 96-104.

In the context of public employment, the constitutional right to be free from employment discrimination on the basis of race is clearly established. *See, e.g., Rioux v. City of Atlanta*, 520 F.3d 1269, 1283 (11th Cir. 2008). This includes the "reverse discrimination" claims pleaded by Hamner. Thus, based on the allegations in Hamner I that TCSS treated a similarly situated employee of another race more favorably, Hamner could have had a good faith, reasonable belief that TCSS discriminated against her on the basis of race. *See Hamner I*, No. 7:15-cv-00925-JHE, doc. 1 at ¶ 101. *See also Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (listing the elements of a discrimination claim). Consequently, Hamner plausibly alleges that she engaged in statutorily protected activity.

Next, while Hamner's discharge is a materially adverse action, *see Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008), Hamner still must provide proof that "'the protected activity was a but-for cause of the alleged adverse action by the employer,'" *Trask*, 822 F.3d at 1194 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). Put differently, to state a retaliation claim, Hamner must plausibly allege that had she not complained of racial discrimination in Hamner I, TCSS would not have discharged her. Hamner can meet the causation requirement if she shows that TCSS knew of the protected expression and "'that there was a close temporal proximity between this awareness and the adverse . . . action.'" *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quotation omitted). While, the temporal proximity must be very close, and a two-month gap between the statutorily-protected expression and the adverse employment action may not be close enough, *see Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226, 229 (11th Cir. 2011), "'courts have routinely found a causal connection even as to retaliatory acts occurring long after the protected activity, where those events are linked by a chain of intervening retaliatory acts,'" *Tyler v. Kia Motors Mfg. Ga., Inc.*, Civil Action No. 3:14–cv–00147–TCB–RGV, 2016 WL 9663168, at *19 (N.D. Ga. Aug. 1, 2016) (quoting *Pears v. Mobile County*, 645 F. Supp. 2d 1062, 1096 (S.D. Ala. 2009)).

Here, Hamner alleges that the Defendants set a retaliatory trap in motion during Hamner I, which culminated in her discharge over a year later. Specifically, Hamner asserts that (1) during Hamner I, Davie excluded terms from the settlement agreement that could have restricted TCSS's ability to retaliate against her, doc. 1 at 7, ¶ 28; (2) Davie transferred Hamner to a new school in violation of TCSS policy, *id.* at 8, ¶ 30; (3) after that transfer, Henson prevented Hamner from fulfilling her responsibilities as "building test coordinator," *id.* at 13, ¶ 37; and (4) TCSS launched a pretextual investigation into Hamner's Section 504 plans that resulted in her suspension and ultimate termination, *id.* at 21, ¶¶ 59-64. Those allegations, when viewed in the light most favorable to Hamner, are sufficient to give rise to a plausible inference of causation. As a result, although TCSS's motion to dismiss the § 1981 claim against it is due to be granted, Hamner may re-plead, by July 19, 2019, her § 1981 retaliation claim pursuant to § 1983.

2. Retaliation Claims Against the Individual Defendants

The Individual Defendants separately contend that § 1981 does not provide an independent cause of action again them as state actors. Doc. 8 at 5. Indeed, "[w]hen individual school administrators are sued in their official capacities, they are considered officers of the board of education, . . . [and claims] against officers in their official capacity are 'functionally equivalent' to claims against the entity that they represent." *Katherine S. v. Umbach*, 2002 WL 226697, *18 (M.D. Ala. Feb. 1,

2002) (quotation omitted). Therefore, the retaliation claims against the Individual Defendants in their official capacities are due to be dismissed. The retaliation claims against the Individual Defendants in their individual capacities, if any, also fail because the only materially adverse actions Hamner alleges are her suspension and subsequent termination. *See* doc. 1 at 28, ¶ 88. However, the Board—not the Individual Defendants—is exclusively empowered to "suspend or dismiss . . . superintendents, principals, teachers, or any other employees or appointees of the board." Ala. Code 1975 § 16-8-23. As such, Hamner fails to allege any materially adverse action taken against her by the Individual Defendants. Therefore, the § 1981 claims against the Individual Defendants are due to be dismissed.

## D. Battery Claims—Count V

Hamner asserts battery claims against TCSS and Henson under Alabama law. Doc. 1 at 29, ¶¶ 94-98. TCSS and Henson in his official capacity are immune from common-law tort suits under the Alabama Constitution. *See* Art. 1, § 14, Ala. Const. of 1901; *Ex parte Hale County Board of Education*, 14 So. 3d 844, 848 (Ala. 2009). Therefore, the battery claims against TCSS and Henson in his official capacity are due to be dismissed. However, a "State agent shall not be immune from civil liability in his or her personal capacity . . . when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000)

(emphasis in original omitted). The allegations against Henson that he willfully touched Hamner without her consent in a sexually suggestive manner, doc. 1 at 12, ¶ 35, are sufficient at this juncture for the individual capacity claim against Henson to proceed.[6] Indeed, contrary to the Defendants' contention that Hamner must allege facts of a harmful or offensive touching, doc. 8 at 9, the Supreme Court of Alabama has allowed an assault and battery claim to proceed where the defendant intentionally touched the plaintiff in a sexually suggestive manner, and where the touching was unwelcome. *See Ex Parte Atmore Community Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998) (citation omitted). Therefore, Hamner may pursue a battery claim only against Henson in his individual capacity.

### E. **Whether Venue is Proper**

Finally, the Defendants ask the court to transfer this matter to the Western Division, citing the lawsuit's relationship to Tuscaloosa County. Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice,

---

[6] As for Henson's contention that "there is no independent basis for Federal jurisdiction over Mr. Henson . . . [and] the Court lacks jurisdiction to hear a pendant state claim against him," doc. 8 at 11, "[t]he decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court," *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004). And, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." § 28 U.S.C. § 1367(a). Here, the federal and state claims clearly derive from "a common nucleus of operative facts" pertaining to the allegedly sexually-hostile environment at a middle school. *See PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1310 (11th Cir. 2016). As a result, the court can exercise jurisdiction over the battery claims against Henson.

a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer hinges upon several convenience factors: (1) plaintiff's choice of forum, (2) convenience of parties and witnesses, (3) place of alleged wrong, (4) location of counsel, (5) cost of obtaining the attendance of witnesses, (6) accessibility and location of sources of proof, and (7) possibility of delay and prejudice in the event of transfer. *See Terrell v. Tyson Foods, Inc.*, No. 2:05-CV-1069-RDP, 2008 WL 11375378, at *1 (N.D. Ala. Jan. 3, 2008) (citing *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001)). Hamner readily concedes that the acts or omissions giving rise to her claims took place in the Western Division, the relevant evidence is located in that Division, the parties reside in that Division, and this action is related to the prior civil action she filed in that Division. She contends instead that the Southern Division is more convenient for her, "her counsel, and her witnesses that live in the Southern Division, . . . including a potential expert witness," and that it would cause her a financial hardship to pay for the transportation of potential witnesses to Tuscaloosa. Doc. 15 at 22. Weighing these contentions and the other factors, however, the court finds that the site of the material events in this case, the relative convenience of party witnesses, and the relative ease of access to sources of proof weigh in favor of transfer. Accordingly, the Defendants' motion to transfer divisional venue is due to be granted.

## IV. CONCLUSION AND ORDER

The Defendants' motions to dismiss, docs. 5 and 8, are **GRANTED** as to (1) the Title VII and § 1981 claims against the Individual Defendants, (2) the § 1981 claims against TCSS, (3) the state law battery claim against TCSS and Henson in his official capacity, and these claims are **DISMISSED WITHOUT PREJUDICE**. In all other respects, the Defendants' motions, docs. 5 and 8, are **DENIED**. Hamner is **ORDERED** to amend her complaint by July 19, 2019 to plead her § 1981 retaliation claim against TCSS pursuant to § 1983, and to perfect service on TCSS and Davie in accordance with the Federal Rules of Civil Procedure on or before July 19, 2019. Finally, the Defendants' motion to transfer venue to the Western Division of the Northern District of Alabama is **GRANTED**, and the Clerk is **DIRECTED** to randomly reassign this case to a Judge in the Western Division.

**DONE** the 10th day of July, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE