# IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

SHANNON HAMNER,

     Plaintiff,

v.

TUSCALOOSA COUNTY
SCHOOL SYSTEM,
WALTER DAVIE,
ALLISON MAYS AND
CLIFTON ("CRAIG") HENSON,

    Defendants.

CASE NO. 2:18-cv-01838-JEO

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO TCSS'S MOTION FOR SUMMARY JUDGMENT (Doc. 84)

---

Barry V. Frederick (ASB-1979-C65B)
Attorney for Plaintiff Shannon Hamner

OF COUNSEL:

## THE FREDERICK FIRM

5409 Trace Ridge Lane
Birmingham, Alabama 35244
(205) 739-0043 phone
(205) 739-0044 fax
Barry@frederickfirm.net

1

# **TABLE OF CONTENTS**

I.   FACTS ...........................................................................................................3

  A.  TCSS's Statement of Facts ........................................................3

  B.  Plaintiff's Statement of Undisputed Facts .......................................4

  C.  Statement of Disputed Facts ........................................................5

II.  LAW ...........................................................................................................6

  A.  There Was More Adverse Action Against Plaintiff Than TCSS Acknowledges ........................................................6

  B.  The "Signature Page Practice" Purported Reason for Plaintiff's Termination ........................................................10

  C.  TCSS's Failure to State any Legitimate Non-Discriminatory and Non-Retaliatory Reason for Treating Plaintiff Worse Than Her Comparators ........................................................15

  D.  Defendants' Shifting Stated Purported Reason for Plaintiff's Termination ........................................................16

  E.  Davie's and TCSS's Failure To Comply With TCSS's Policy About Unassignment And Re-Assignment ........................................17

  F.  TCSS's Red Herring Jury Arguments .......................................18

  G.  Plaintiff's Sexually-Hostile Work Environment ...........................20

# I.     FACTS

## A.     TCSS's Statement of Facts

As demonstrated in Plaintiff's Declaration, (Doc. 92-1 ¶75), each of the paragraphs identified below are denied because they contain purported operative facts that are false and/or also imply purported facts that are false (or as otherwise noted below):

8.     Plaintiff denies and disputes the purported truth of TCSS's statement of purported facts stated in paragraph 8, which is false and misleading because it is a grossly incomplete description of how that transfer came about, which is fully, accurately and truthfully described in Plaintiff's interrogatory answers (Doc. 92-2, pp. 28, 33-35), but and tellingly, not so-described by TCSS in its ¶ 8. (Doc. 92-1 ¶75).

9, 12-24.    See Doc. 92-1 ¶75.

12.     This is not a statement of fact, but a statement of, and about, law, the truth or falseness of/to which Plaintiff cannot declare under penalty of perjury/otherwise swear.

25.     False because it is a grossly incomplete representation (Doc. 92-1 ¶75). 26-39, and 41-43.  Id.

44-45.     Plaintiff was not told this was happening.  Id.

46, 51, 53-58, 61-63, 67-68, 73-75, 78, and 80.      Each of the paragraphs identified contain purported operative facts that are false and/or also imply purported facts that are false.  (Doc. 92-1 ¶75).

47-48, 50, 52, 59-60.      There is much more to the events described in only a limited and isolated (out of context) extent in these paragraphs.  Id.

64.     This is not a statement of fact, but a statement of, and about, law, the truth of falseness of/to which Plaintiff cannot declare under penalty of perjury/otherwise swear.

The same citation to record evidence for all the above is Plaintiff's Declaration Doc. 92-1 ¶ 75.[1]

## B.     **Plaintiff's Statement of Undisputed Facts**

The first part of Plaintiff's statement of undisputed facts correspond to the same numbered paragraphs of Plaintiff's Declaration, which Plaintiff adopts and incorporates by reference here.  Doc. 92-1.

---

[1] In the event TCSS (or any Defendant argues in reply Plaintiff's sworn denial in her declaration alone is not sufficient to defeat summary judgment, that argument would run afoul of the Eleventh Circuit's fairly recent decision in United States v Stein, 881 F.3d 853 (11th Cir. 2018), which held that "in all civil actions" a party's affidavit, standing alone, "may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated." Id. at 854. In Stein, the court overruled prior authority to the contrary. See id.

The second part of Plaintiff's statement of undisputed facts correspond with and are Plaintiff's answers to TCSS's interrogatories, which Plaintiff also adopts and incorporates by reference here.[2]  Doc. 92-2.

## C.    **Statement of Disputed Facts**

To the extent, if any, Defendants dispute Plaintiff's statement of undisputed facts, those disputed facts become Plaintiff's statement of disputed facts with the purported facts in Defendants' narrative statement of facts Plaintiff disputes in Section A above.

Frankly, and as shown below, with limited exceptions, Defendants' arguments are largely legal arguments not tied to facts.   Nonetheless, some of TCSS's arguments are heavily tied to and based on disputed facts, for which there is need to reference and cite Plaintiff's Declaration or her interrogatory answers, but Plaintiff does so below where appropriate and when necessary to address Defendants' factual arguments.

---

[2] The undersigned knows that courts frown on attempts to evade page limitations on briefs by incorporations by reference.  Plaintiff is not attempting to evade this Court's 30-page limitation on Plaintiff's brief in opposition to Defendants' motion for summary judgment ("MSJ"); instead, stating all Plaintiff's facts in opposition to their MSJ, as set forth in Plaintiff's Declaration, in this brief, would by itself make it impossible to comply with the 30-page limitation for this brief if Plaintiff must put in greater detail all Plaintiff's evidence that justifies denial of TCSS's MSJ. If this is not acceptable, Plaintiff respectfully requests leave to exceed the 30-page limitation by the incorporations by reference done above, or leave to refile this brief with the evidence incorporated by reference set forth in the refiled brief in greater detail and in excess of the 30-page limitation.

The undersigned respectfully submits these incorporations by reference are necessary because Plaintiff's declaration, alone, is **28** pages, and her interrogatory answers are (ugh) well over **200** pages.

## II.      LAW

## A.      There Was More Adverse Action Against Plaintiff Than TCSS Acknowledges

This might be due to TCSS's erroneous belief and statements that for Plaintiff to have a retaliation claim she must have suffered "adverse **employment** actions." (Doc. 85 18; emphasis added).[3]   Nonetheless, Plaintiff suffered plenty of adverse employment actions.  She was:

(i)      "unassigned" (*i.e.*, removed) from the position she held at HMS for more than a decade and re-assigned to an "unassigned" status at an unidentified school, which was a procedure TCSS usually used in the context of disciplining the unassigned employee, and which put a stigma on Plaintiff's employment at TCSS; (Doc. 92-2 pp. 28, 33-35); this reassignment to an unassigned status was done in a way that violated TCSS's policies (Doc. 92-2 pp. 28, 35) and

---

[3] In arguing retaliation claims require an "adverse **employment** action," TCSS argues old law that is no longer good law. Indeed, TCSS argument about this is frivolous because it has not been the law for more than a decade and it is not the law now.

In <u>Burlington Northern & Santa Fe Railway v. White</u>, 548 U.S.53 (2006), the Court specifically held that Title VII's protection against retaliation is **not** limited to adverse employment actions. <u>Id.</u>at 56 ("We conclude that [Title VII's] antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace.").

Proof of "an adverse **employment** action" that TCSS argues is required, unquestionably is not, which negates all TCSS's arguments that it is somehow entitled to summary judgment based on TCSS's heavy reliance on arguments about adverse **employment** actions.  Plaintiff respectfully submits that under <u>Burlington</u>, TCSS's arguments about adverse **employment** actions are due to be ignored.

was a procedure contrary to the "voluntary transfer" procedure that Defendant Davie told Plaintiff would be used to move her to CRMS (Doc. 92-2 p. 17);

(ii)    Thereafter transferred to CRMS, where she was required to work in demeaning conditions in a shared, non-private office that was not conducive to her job of counseling students and parents in privacy, and which was a "sick" office that adversely affected Plaintiff's health (made her sick) from asbestos contamination and mold associated with a hole in its ceiling that leaked water from holes in pipes in the ceiling or a leaking roof, which were conditions that were not present in the private office Plaintiff previous had and did not share with another employee at HMS (Doc. 92-1 ¶18) before Defendant Davie insisted, and Defendant Mays recommended to TCSS's board, and the board itself transferred Plaintiff to CRMS (Doc. 92-1 ¶16, 92-2 p.44).

(iii)   At CRMS, having to work under a principal, Defendant Henson, the school's principal, who (a) sexually harassed her, including stalking Plaintiff (Doc. 92-2 pp.97, 106-107, 110, 203, 209, 215) and also committing batteries by inappropriately touching her on three occasions (Doc. 92-1 ¶¶53-56); (b) would not let Plaintiff do her job as the building test coordinator for CRMS's administration of standardized student tests (Doc. 92-2 p.85); (c) made statements denigrating other women based on their gender; and

7

(d) harassed a buxom female CRMS teacher by staring at her breasts instead of looking her in the eyes when he talked with her (Doc. 92-2 pp.104-105, 210-211).

(iv)   Subjected to a retaliatory trap Defendant Davie set by making sure Plaintiff's transfer to CRMS was not a part of the settlement agreement that settled Hamner I, which made it easier for TCSS to fire Plaintiff than it would have been had her transfer to and employment at CRMS been part and a condition of the agreement by which Plaintiff settled Hamner I (Doc. 92-1 ¶16).

(v)    Suffered the retaliatory threat of being sued by a TCSS employee witness Plaintiff's counsel deposed in Hamner I for the witness's stated reason of getting the witness involved in that lawsuit, which was a retaliatory threat on its face. (Doc. 92-1 ¶13).

If TCSS claims any or all of this was not adverse employment action, the law has not required "adverse actions" be **employment** actions in more than a decade. See p.4 n. 1 *supra*.[4]

Regarding adverse employment actions, TCSS focuses on the termination of Plaintiff's employment, but Plaintiff was fired after she was suspended purportedly for TCSS to "investigate" a practice in which Plaintiff as a 504 committee chair had

---

[4] Of course, TCSS cannot raise new arguments about what else constitutes adverse actions for the first time in a reply brief.

engaged with the agreement and approval of all other members of the 504 committee at HMS without any adverse action taken against Plaintiff for doing so prior to Hamner I and its settlement that paid Plaintiff a confidential amount of money. The central office member of TCSS's management in charge of TCSS's 504 program system-wide Greg Hurst, had reviewed and approved and even commended Plaintiff for the 504 plans at HMS that resulted from the practice for which Plaintiff was ultimately suspended and fired after TCSS paid Plaintiff money to settle Hamner I and transferred Plaintiff to CRMS.

TCSS contends that it and Defendant Davie did everything they did without consideration of Hamner I, but TCSS board minutes reveal that in the meeting in which the board transferred Plaintiff to CMRS, it went into an executive session with its attorney Ray Ward to discuss pending litigation, and the only litigation then pending was Plaintiff's lawsuit. (Doc. 92-2 pp.29, 36, 37, 45). One reasonable inference from this fact that should and must be drawn in Plaintiff's favor is TCSS's representations that its board and Defendant Davie did not consider Plaintiff's protected conduct of her prior § 1981 litigation against TCSS is false. At a minimum there is a disputed and a genuine issue over that material fact.

Plaintiff was singled out for investigation, suspension, and discharged purportedly for engaging in a 504 plan "signature page" practice, to/of which all other members of the 504 committees at HMS and CRMS had agreed/approved and

in which they had also engaged and participated, but for which they were not suspended or fired.  The only difference is they had not filed a § 1981 lawsuit against TCSS for race discrimination and had not been paid money to settle.  TCSS's only response to this at the hearing before its board was that the other members of the 504 committees at HMS and CRMS had not so agreed, **except** those at CRMS had agreed to and authorized using the practice as to only one 504 CRMS student.  Plaintiff disagrees, (Doc. 92-1 ¶34), and at a minimum there is a disputed and a genuine issue over this material fact too.

## B.   The "Signature Page Practice" Purported Reason for Plaintiff's Termination

TCSS (Doc 85 at 19) calls the 504 plan "signature page practice": "her [meaning Plaintiff's] scheme."  Plaintiff denies that and also disputes it with evidence that the practice, or "scheme" using TCSS's word, was suggested by Alan Giles, an assistant principal at HMS who was part of HMS's 504 committee.  Giles suggested the 504 committee at HMS use the "signature page practice" in dispute as their way to deal with a problem of 504 committee members not attending 504 committee meetings (Doc. 92-1 ¶¶25-27). When addressing that same problem with Henson at CRMS, Plaintiff explained the Giles-suggested practice to Henson as a practice they tried and used to handle the problem at HMS.  Henson approved, agreed to using, and suggested the 504 committee at CRMS also use the same practice for its 504 plans. (Doc. 92-1 ¶41-42).  All other members of CRMS 504

committee also approved of and agreed to use the practice at issue, in which they too engaged and participated (Doc. 92-1 ¶37), for which they were not suspended or fired.  They had not sued TCSS in a § 1981 lawsuit that claimed race discrimination and they had not been paid by TCSS to settle such a suit.  Given the disputed and genuine issues of material fact over the extent to which other members of CRMS's 504 committee had approved of and agreed to use the practice at issue, to which TCSS even admits they **did** as to the 504 plan for at least one CRMS 504 student, Plaintiff respectfully submits sorting this all out is a function of the jury, not of this Court on motions for summary judgment.

Another example of factual dispute is TCSS's contention CRMS's other 504 committee members "would not have signed the blank form had they known what Plaintiff was going to do with it." (Doc. 85 p.19 of 31). First, that is nothing more than a non-sequitur; it is like saying someone would not have signed a blank check had they known someone would cash it.

Regardless, TCSS's contention about this is belied by written statements of two members of CRMS's 504 committee (Henson and Marlana Mason) that were buried among the 19,000+ pages of documents TCSS belatedly produced.[5]

---

[5] By using the word "buried," Plaintiff's counsel does **not** intend to accuse TCSS's counsel of intentionally trying to hide the two short statements, which together consists of a total of two pages. But by the very nature of the fact the two statements consisted of a total of two pages among the 19,000+ pages TCSS belatedly produced, the two statements were "buried" within the mass of all documents that were produced. Not complaining here; just reporting.

Reasonable, and even obvious, inferences drawn from each statement is that Henson and Mason knew what Plaintiff was going to with the blank signature page form they pre-signed and dated (Doc. 92-1 ¶¶39-41, 43-46).

One reasonable inference drawn in Plaintiff's favor from that statement, Henson's use of plurals: **any**, **students**, **parents**, and **they**, and that "the sheet [the pre-signed and dated signature page] would serve as the" signature page that would be used for 504 plans of multiple 504 students.

Plaintiff need not rely on reasonable, even obvious, inferences alone, because Plaintiff's declaration affirmatively evidences Plaintiff specifically discussed with Henson and Mason the practice that the signature page would be used in and for the 504 plans for various 504 students whose parent(s) did not attend a 504 committee meeting to review their child's 504 plan.  (Doc. 92-1 ¶¶41, 46).  There could not be a more obvious dispute and genuine issue of material fact (and in this instance regarding facts that could not be more material):  TCSS says it happened one way; Plaintiff denies and disputes what TCSS says, and Plaintiff says it happened another way.

As the Court knows, this is not what summary judgments are made of, which means TCSS's motion for summary judgment ("MSJ") is due to be denied.

Apparently recognizing its problem with factual disputes over its stated 504 plan "signature page practice" reason for suspending and firing Plaintiff, TCSS turns

to another purported reason it claims justified the firing Plaintiff but not any other member of HMS's or CRMS's 504 committees who had approved, agreed to and engaged and participated in the same "signature page practice" with Plaintiff but had not engaged in protected activities like Plaintiff had.

The other reason is:  TCSS further claims it fired Plaintiff for purportedly "modifying" an official TCSS 504 plan form.  Specifically, it was an official form that was used as one way to notify parents of 504 students about attending a scheduled 504 committee meeting to review their child's 504 plan.  Plaintiff denies having modified said notice form and declares she only completed the form (Doc. 92-1 ¶67).

As much as the undersigned disliked linguistics in his 8th grade English class, it is worth noting the language Plaintiff put on the notice form to complete it followed an incomplete statement on the form, which was one that ended with a colon (without any period or anything else immediately following the colon).  TCSS is in the education business, including English education.  As such, it surely knows grammatically correct sentences do not end with colons:

No, that colon ending that last statement was not a typo, but was an example of Plaintiff's point.  Something must be added after a colon to complete a statement/sentence that otherwise appears to end with a colon.  For another example: This incomplete "sentence" cries out for:

Regardless, there is a dispute and a genuine issue over the fact whether Plaintiff modified the notice form or merely completed it.  There is also a dispute over whether the language Plaintiff used to complete the notice form was intended (or actually worked, which TCSS has not shown) to discourage parents from attending a 504 committee meeting to review their child's 504 plan.  That "discourage" inference is nothing more than an inference TCSS would have the Court improperly draw in TCSS's favor. A reasonable inference properly drawn in Plaintiff's favor is that the language Plaintiff used to complete the notice form gave parents alternatives that made it easier and more convenient for them to attend a 504 committee meeting about their child's 504 plan.  Squarely disputing and contrary to any improper inference of the "discouraging" intent TCSS wants this Court to attribute to Plaintiff, is Plaintiff's declaration she did everything she could reasonably do to encourage parents to attend, including repeatedly calling them and sending them e-mails to invite and encourage them to attend scheduled 504 committee meetings.  Plaintiff even held meeting with them, at their responsive requests, at locations convenient for the parent(s) regardless of whether the location was inconvenient for Plaintiff. (Doc. 92-1 ¶67).

As this Court knows, it is axiomatic that questions of intent are normally for the jury to decide.

C.    **TCSS's Failure to State Any Legitimate Non-Discriminatory and Non-Retaliatory Reason for Treating Plaintiff Worse Than Her Comparators**

Other evidence is equally if not more important regarding TCSS's reliance on its "Plaintiff modified and used a modified TCSS's official form" reason for firing Plaintiff. The male chair of a 504 committee at another TCSS school named Brad Armstrong, created, and that 504 committee used, Armstrong's own modified forms that differed from TCSS's official 504 plan forms for his and that committee's 504 plans, and Armstrong was not fired for doing so.  Armstrong had not engaged in protected activities like Plaintiff had (Doc. 92-1 ¶68).  In TCSS's motion and other filings, it does not even attempt to offer any explanation or state legitimate non-retaliatory and non-discriminatory reason for its disparate treatment of not firing Armstrong and firing Plaintiff allegedly for this offense, which precludes summary judgment under the analysis TCSS states must be applied to Plaintiff's discharge claim.

Moreover, also buried among the 19,000+ pages of documents TCSS belatedly produce are copies of 504 plans of the 504 committee of Armstrong's school that contain forms Armstrong created that differed from TCSS's official 504 plan forms but nonetheless were part of TCSS's official 504 plans for that school. (Doc. 92-1 ¶68).

**D.** **Defendants' Shifting Stated Purported Reason for Plaintiff's Termination**

TCSS goes on to say Plaintiff's employment was terminated "for **a** simple reason—she improperly modified 504 forms without authorizations and she falsified 504 documents" and "[i]t was for this reason that Plaintiff was terminated (Doc. 85 p. 20 of 31 emphasis of **a** added).

Defendants' problem with this is they cannot get their stories straight.  The individual Defendants explicitly stated Plaintiff was fired for three reasons (Doc.87 p. 21 of 28) and they add a purported third reason for which **they** explicitly stated Plaintiff was terminated: "emailing confidential student records to her personal email account and storing them in an unauthorized location outside the control of TCSS." (Doc. 87 p. 21 of 28).  Plaintiff denies she did that (Doc. 92-1 ¶66), which raises yet another dispute and genuine issue of material fact that precludes summary judgment. Equally important, it is well-established that Defendants' shifting stated reasons for Plaintiff's discharge constitutes evidence that the stated reasons are a pretext for the unlawful reason at issue (here retaliation). See Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1194 (11th Cir. 2004) (reversing post-verdict judgment as a matter of law for employer and holding that evidence of pretext includes where "**s**hifting" reasons for an employment decision are given, making a discharge claim one for the jury to decide).

16

This is especially true here given that their third reason for Plaintiff's discharge evidences a shifting of a large magnitude, in that it was not one of the reasons listed on Defendant Davie's list of reasons for his recommendation for Plaintiff's termination.  Davie testified at the board hearing there were no reasons for Plaintiff's termination that were not set forth in said letter (Doc. 92-1 ¶66).

In a similar vein, Davies' letter did not list "falsification" of anything as a reason for Plaintiff's termination; the world "falsification" does not appear in said letter.  Nonetheless, and in continuing shifting fashion, Defendants claim Plaintiff was terminated for "falsification" of 504 plan documents.   Again, and as in *Cleveland*, *supra*, it is necessary for a jury to resolve the credibility of Defendants' shifting stated reasons for Plaintiff's termination.   Accord Rodriguez v. Cargo Airport Servs. USA, LLC, 648 F. App'x 986, 991 (11th Cir. 2016). Landolfi v. City of Melbourne, Fla., 515 F. App'x 832, 835 (11th Cir. 2013).  This is settled law.

## E.   **Davie's and TCSS's Failure To Comply With TCSS's Policy About Unassignment And Re-Assignment**

Davie and TCSS did not comply with TCSS's own policy about unassignments and re-assignments of a tenured employee such as Plaintiff.  TCSS's policy required TCSS or Davie to give Plaintiff prior notice of her unassignment and re-assignment and notice of her right to meet with TCSS's board to address those changes to her employment.  In violation of this policy, neither TCSS nor Davie provided such required notice to Plaintiff.  (Doc. 92-2 pp.28, 35).

17

An employer's violation of its own policies is evidence of pretext and an unlawful motive.  See, e.g., Rodriguez, 648 F. App'x at 991, *citing and quoting* Morrison v. Booth, 763 F.2d 1366, 1374 (11th Cir.1985) ("Departures from normal procedures may be suggestive of discrimination.").

## F.   TCSS's Red Herring Jury Arguments

TCSS's arguments about the determinations of the EEOC and Alabama's Department of Labor do not warrant any response other than those determinations are not binding here.  TCSS does not and cannot contend otherwise.  Essentially, TCSS's arguments about them are jury arguments it should save for the jury.

The same is true of former justice Maddox's purported review of TCSS's decision to terminate Plaintiff's employment which was, as TCSS knows, pursuant to an optional review procedure school systems and the teacher's union in Alabama (the AEA) developed.  It, too, is not binding on this court, and TCSS again does not and cannot contend otherwise.  It is just another jury argument TCSS irrelevantly makes in an attempt to persuade the Court at this summary stage in hopes it will not have to go before a jury to have the jury sort everything out.

In essence, TCSS's argument that Plaintiff was the only one who purportedly did this or that is an argument Plaintiff purportedly lacks comparators that were treated more favorably than Plaintiff.  But TCSS should know this argument is false, because at the hearing before the board, Plaintiff did what she does here – identifies

Brad Armstrong as a male 504 committee chair who was not fired for using 504 plan forms he created and that differed from TCSS's official 504 plan forms, and identifies her predecessor as CRMS's 504 committee chair Reba Box, who maintained CRMS 504 plans on scraps of paper that were not TCSS's official 504 plan forms but looked like they had been torn out of a spiralbound notebook  That was for the 504 plans Box maintained at CRMS, and there were many more CRMS 504 students for whom Box did not maintain any 504 plan at CRMS at all, much less on TCSS's official 504 plan forms. (Doc. 92-1 ¶¶68-71).  Neither Armstrong nor Box were fired, nor had they engaged in protected conduct like Plaintiff had – they had not filed a § 1981 lawsuit against TCSS for race discrimination.  Id.

Plaintiff further notes that buried among the 19,000+ of documents TCSS produced are copies of 504 plans for students at other TCSS schools that appear to have signature pages bearing copied signatures.  (Doc. 92-1 ¶50).  There may very well be comparators galore.

In addition, and at risk of repetition, Plaintiff also has obviously identified **all of the many** other members of the 504 committees at HMS and CRMS who agreed to, approved of, and engaged in practice of using a copied signature page in and for 504 plans for more than one 504 student (students whose parent(s) did not attend a 504 plan committee meeting to review their child's 504 plan).  All approved of, agreed to and participated and engaged in the practice, but only Plaintiff was

19

purportedly suspended and fired for doing so.  (Doc. 92-1 ¶¶46-48). Out of all those many comparators who remained in their employment with TCSS, only Plaintiff was fired and only Plaintiff had engaged in protected conduct under § 1981, conduct that is protected from Defendants' retaliation.

**G.**     **Plaintiff's Sexually-Hostile Work Environment**

The sexually hostile environment in which Plaintiff had to work

(i)        started at HMS and included coach Pruitt's truly perverted display (literally) of his penis during his sexual assault on and battery of Plaintiff and his subsequent and repeated writing sexually harassing notes to Plaintiff as described in Plaintiff's Complaint in Hamner I (the factual allegations of which Hamner has verified in her declaration here (Doc. 92-1 ¶8) and the latter for which TCSS's then Senior Human Resources Director Benson found Pruitt **guilty** of sexually harassing Plaintiff (Doc. 92-1 ¶10);

(ii)       continued with Plaintiff's so-called voluntary, but actually forced, transfer to CRMS, where she was forced to work under disamenities and unsanitary, unhealthy conditions that made her sick as described in Plaintiff's brief opposing the other Defendants' MSJ, which under the wall of authorities

Plaintiff cited there, was an unlawful response to Plaintiff's complaints about her sexually hostile environment (Doc. 94 pp. 18-20 of 33[6]);

(iii)   and continued at CRMS with Henson's sexually harassing stalking of and inappropriately touching Plaintiff as described in her brief opposing the other Defendants' MSJ (Doc. 94 pp. 28-30 of 33);

(iv)   and continued with Henson's gender-denigrating statements about other women and his staring at the breasts of a teacher while he talked with her, as described in Plaintiff's interrogatory answers (Doc. 92-2 pp.104-105, 210-211);

(v)   and also with Henson not letting Plaintiff do her job as CRMS's building test coordinator (Doc. 92-2 p.85);

(vi)   moreover, Henson's creepy harassment affected Plaintiff's job performance, in that it made Plaintiff all the more willing to use the "signature page practice" at CRMS for which Plaintiff was ultimately purportedly fired because that practice meant there would be fewer occasions on which Plaintiff would have to meet with Henson, thereby reducing the opportunities for him to further sexually harass her (Doc. 92-1 ¶42).

---

[6] The page numbers at the bottom of the Response (Doc. 94) differ from the page numbers generated by the Courts' ECF system at the top, the latter of which are referenced here.

Under all these circumstances, Plaintiff submits her work environment was objectively sexually hostile by any reasonable objective view of sexual hostility; it was certainly subjectively sexual hostile to Plaintiff.

That Henson lacked formal authority to make decisions adverse to Plaintiff's employment is immaterial; there is evidence that Henson actually engaged in conduct adverse to Plaintiff.  As shown above, the out-dated and now superseded requirement that adverse actions had to be **employment** actions has not been the law for more than a decade, which is a point TCSS completely misses in its brief about Henson's lacking authority over her employment sufficient to make her work environment sexually hostile.

On all grounds described above, and those set forth in Plaintiff's brief opposing the other Defendants' MSJ (Doc. 94) (to the extent applicable here), Plaintiff respectively submits TCSS's MSJ is due to be denied.

Respectfully submitted this 2nd day of November, 2020.

s/ *Barry V. Frederick*

Barry V. Frederick (ASB-1979-C65B)
Attorney for Plaintiff Shannon Hamner

OF COUNSEL:

THE FREDERICK FIRM

5409 Trace Ridge Lane
Birmingham, Alabama 35244
(205) 739-0043 phone
(205) 739-0044 fax
Barry@frederickfirm.net

## CERTIFICATE OF SERVICE

I hereby certify the foregoing has been electronically filed with the Court's
ECF filing system, which will electronically serve all counsel of record on this 2nd
of November, 2020.

s/ *Barry V. Frederick*
Of Counsel