FILED
2021 Feb-17  PM 02:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| SHANNON HAMNER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 7:18-cv-01838-LSC |
| | ) | |
| TUSCALOOSA COUNTY | ) | |
| SCHOOL SYSTEM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF OPINION

## I.   INTRODUCTION

Plaintiff Shannon Hamner ("Hamner") brings this action against her former employer, Defendant Tuscaloosa County School System ("TCSS"), and three of TCSS's employees, Defendants Walter Davie ("Davie"), Allison Mays ("Mays"), and Clifton Henson ("Henson") (collectively, the "Individual Defendants"). In Count I of Hamner's complaint, she asserts claims against TCSS and the Individual Defendants (collectively, "Defendants") for retaliation under 42 U.S.C. § 1981 brought pursuant to 42 U.S.C. § 1983.[1] In Counts III and VI, Hamner asserts claims against TCSS for retaliation under Title VII of the Civil Rights Act of 1964,

---

[1]       In Count II, Hamner asserted claims of retaliation under 42 U.S.C. § 1981, which the Court previously dismissed. (*See* doc. 78.)

42 U.S.C. § 2000e *et seq.* ("Title VII"). In Count IV, Hamner asserts a gender discrimination claim against TCSS under Title VII. In Count V, Hamner alleges she was subjected to a sexually hostile work environment by TCSS in violation of Title VII. In Count VII, Hamner asserts a state law claim for battery against Henson.

Before the Court are Defendants' Motions for Summary Judgment (docs. 84 & 86); TCSS's Motion for Reconsideration (doc. 90); Defendants' Motions to Strike (docs. 96, 97, 98, 101, 102, 103, 114, 117, 118, 119, & 120); and TCSS's Motion to Deem Statements of Facts Admitted (doc. 115). The motions are fully briefed and ripe for review. For the reasons stated below, Defendants' Motions for Summary Judgment are due to be granted in part, denied in part, and terminated as moot in part; TCSS's Motion for Reconsideration is due to be denied; TCSS's Motion to Deem Statements of Facts Admitted is due to be denied; and Defendants' Motions to Strike are due to be terminated as moot in part and denied in part.

## II.   BACKGROUND[2]

Hamner, a Caucasian female, was employed by TCSS for over twenty years. Most recently, she worked as a guidance counselor at Hillcrest Middle School ("HMS") and later at Collins-Riverside Middle School ("CRMS").

While at HMS, Hamner filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). She alleged that she had been harassed and discriminated against because of her race and gender. This EEOC charge was the basis of a lawsuit filed on June 3, 2015 against TCSS and two employees who are not part of the instant case. *See generally Hamner v. Pruitt*, No. 7:15-cv-00925-LSC (N.D. Ala. June 2, 2015) [hereinafter "*Hamner I*"].[3]

As *Hamner I* was pending, Hamner requested a transfer from HMS to CRMS. The parties dispute the circumstances surrounding this transfer. Hamner states that

---

[2]     The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . . .").

[3]     Hamner goes to great lengths discussing the facts from her complaint in *Hamner I*. That case is not presently before the Court, and the facts recited by Hamner are irrelevant and immaterial to this matter. *Hamner I* will be discussed in as much detail as is required to address Hamner's claims of retaliation arising from *Hamner I*.

she was "coerced" by Davie, the superintendent of education, into submitting a request for a voluntary transfer.[4] (Doc. 92-2 at 31.) Hamner further states that Defendants did not process her request as a voluntary transfer for a tenured employee, but rather they "unassigned" and "reassigned" her to a temporary position at CRMS, which was only guaranteed funding for one year.[5] She contends that this was not proper procedure for considering a voluntary transfer request from a tenured employee, and that she was entitled to notice and the opportunity to

---

[4]     TCSS challenges this, arguing that Hamner's citations to her answers to interrogatories to support her assertions of fact are insufficient. Answers to interrogatories are a form of evidence that may be used as evidence at summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A). The form of Hamner's declaration under penalty of perjury is not a blanket admission that she lacks personal knowledge regarding her answers to interrogatories, as argued by Defendants. This is clear by reading Hamner's answers. As such, Hamner's answers to interrogatories may be considered in her response to Defendants' motions for summary judgment. Additionally, it is worth noting that Defendants' own evidentiary material includes Hamner's transfer request, where she states that "Davie proposed my transfer to CRMS." (*See* doc. 83-2 at 18.)

[5]     Hamner's assertion does not violate the best evidence rule, as argued by TCSS. *See* Fed. R. Evid. 1002 ("an original writing, recording, or photograph is required in order to prove its contents unless these rules or a federal statute provides otherwise."). Hamner is testifying to her personal knowledge regarding TCSS's procedures, which she likely had familiarity with as a tenured employee. *See, e.g.*, *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1543 (11th Cir. 1994) (stating that the best evidence rule does not "require production of a document simply because the document contains facts that are also testified to by a witness" (quoting *United States v. Finkielstain*, 718 F. Supp. 1187, 1192 (S.D.N.Y. 1989)). Furthermore, TCSS does not challenge the accuracy of Hamner's statement. Thus, viewing the evidence in the light most favorable to the nonmoving party, the Court assumes that the manner in which Hamner was transferred was inconsistent with her voluntary transfer request.

request a hearing before her transfer to CRMS was approved.[6] Regardless, Hamner's request was approved by TCSS, and she was transferred to CRMS effective August 16, 2016.[7] Hamner asserts that when TCSS approved her transfer, her pending lawsuit was also discussed, but this is not supported by the record.[8] After her transfer, the parties reached a settlement agreement in *Hamner I*, and that matter was dismissed on October 24, 2016.

---

[6]     TCSS disputes this, arguing that it violates the best evidence rule. Hamner's statement does not violate this rule. In her argument, she cites to Alabama Code § 16-24C-7, which outlines the proper procedure for transferring a tenured employee. (*See* doc. 92-2 at 35.) Thus, Hamner did not need to produce any TCSS policy or procedure regarding transfers as she states she was not afforded her statutory right to request a hearing.

[7]     Hamner "disputes and denies the facts asserted" by TCSS regarding the approval of her transfer request and the effective date of her transfer. (Doc. 111 at 3 ¶ 9.) Hamner cites to a paragraph in her declaration in which she asserts that TCSS's statements have "purported operative facts that are false and/or also imply purported facts that are false." (Doc. 92-1 at 28 ¶ 75.) A declaration is a form of evidence that may be used to support a party's assertion of fact at summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A). However, a declaration must also "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Here, Hamner does not set out any facts, but instead makes conclusory statements regarding TCSS's statements of fact. This is insufficient to create a dispute of material fact when Defendants cite to admissible evidence in support of their assertions. To the extent that Hamner disputes Defendants' facts that are supported by the evidentiary record with only the conclusory statement identified above, Hamner has failed to create any disputes of material fact; therefore, the Court adopts Defendants' statements as fact. As to Defendants' facts that are unsupported by their citations to the evidentiary record, they cannot be considered by the Court regardless of the merit, or lack thereof, of Hamner's responses to those facts.

[8]     Hamner refers to a board meeting where she claims *Hamner I* was discussed, but the parties have not produced the minutes from this meeting in their evidentiary materials. Hamner has not demonstrated she has personal knowledge as to what was discussed during the meeting. Also, she has produced no admissible evidence to support her assertion that *Hamner I* was the only pending lawsuit discussed during that meeting, and that it was discussed in conjunction with her transfer to CRMS. Thus, the Court does not consider this assertion in its analysis.

While at CRMS, Hamner reported being subjected to poor working conditions. She states that her office "had a crumbling, leaking hole in its ceiling" that she claims was "contaminated by mold and asbestos." (Doc. 111 at 22 ¶ 55.) She filed an injury report and submitted documentation from her doctors concerning health issues she believes arose from her working conditions at CRMS.[9] (*See* doc. 83-4 at 39–42.) She requested a transfer to a different office at CRMS, which was denied. The counselor who shared an office with Hamner was allowed to move to a newer office. Hamner noted that her working conditions were markedly different from those at HMS.

In addition to her work as a guidance counselor, Hamner was also the chairperson for the "504 Teams" during her time at HMS and CRMS. Schools are required to provide "504 Plans" for qualified students to aide them as they pursue their education. These teams are comprised of employees and parents of qualifying children. In addition to Hamner, other employees on CRMS's 504 Team included Henson, the principal at CRMS; Marlana Mason ("Mason"); and Becky Stephens ("Stephens").

---

[9]     Defendants included Hamner's injury report that she filed regarding her health issues in their joint evidentiary submission; therefore, TCSS's best evidence rule objection is meritless. Defendants also included notes from Hamner's doctors concerning her health evaluations, thus addressing their objections as to the content of those notes.

The parties dispute what the responsibilities of the chairperson were versus the responsibilities of the other members of the 504 Team. Hamner asserts that (1) she lacked any supervisory authority over members of the 504 Team; and (2) *all* members of the 504 Team were responsible for compiling plans, scheduling, and providing notice of meetings to parents to discuss the plans.[10] TCSS asserts that as chairperson, Hamner was responsible for those duties.

In May 2017, employees noticed that the 504 Plans submitted by Hamner had photocopied, pre-signed, and postdated pages indicating the team members agreed with the proposed plans. Greg Hurst ("Hurst"), TCSS's 504 Plan coordinator for all students in the school system, was notified about this situation.

Meanwhile, Hamner notified Mays, the senior director of human resources, of concerns she had regarding Henson. Hamner reported a series of incidents involving Henson: (1) he drove the wrong way on a one-way street while Hamner was chatting with another teacher outside of the school; (2) he emailed her

---

[10]    TCSS objects to this statement as both speculative and violative of the best evidence rule. Hamner is stating what her role as chairperson encompassed. TCSS points out that Hamner did not offer any policy or portion of a manual stating what her authority and duties were as chairperson. However, neither did TCSS, which would certainly have access to such manuals. Defendants jointly submitted 711 pages of evidentiary material and did not identify or cite to their own manual in support of the chairperson's responsibilities. Instead, TCSS cites to affidavits to support the proposition that Hamner had certain job responsibilities as chairperson, which is no different from Hamner citing to her own sworn declaration.

concerning an absence from school; (3) he allegedly went through her phone log and desk; and (4) Henson reportedly told employees at CRMS to provide him with their system passwords. After receiving this report, Mays scheduled a meeting with Hamner to discuss her concerns. This meeting took place on July 28, 2017. At the end of this meeting, Hamner was placed on administrative leave with pay by Davie pending an investigation into her 504 Plans.

As the meeting ended, Hamner reported she was sexually harassed on multiple occasions by Henson.[11] Hamner states that Henson "suggestively touched [her] hand" on two occasions and that Henson "pressed the front of his body against the back of [her] body" until she asked him to stop.[12] (Doc. 92-1 at 20 ¶¶ 55 & 56.)

---

[11] The parties dispute the precise timing of this report. The Individual Defendants state that Hamner did not inform Mays of her sexual harassment allegations against Henson until after Hamner was placed on administrative leave. Hamner states that she informed Mays prior to being placed on administrative leave.

[12] Hamner also claims that Henson "made statements denigrating other women based on their gender," but Hamner does not cite to anything in the evidentiary record to support this allegation. (Doc. 112 at 25 ¶ 100.) Additionally, Hamner asserts that Henson harassed other women, and that those women filed complaints with TCSS. (Docs. 112 at 25; 92-2 at 104–05 & 210–11.) The Individual Defendants object to this statement of fact as it is conclusory and Hamner lacks personal knowledge as to whether other employees made reports about Henson or whether Henson "harassed a buxom female CRMS teacher by staring at her breasts." (Doc. 112 at 25 ¶ 100.) The Individual Defendants are correct in that Hamner's statement that Henson "harassed a buxom female" is conclusory, thus the Court does not consider it. Hamner also states that she "was told by Mrs. McKellar that Beth Babin reported Craig Henson's remarks to TCSS's board," suggesting that other employees complained to TCSS about Henson's behavior. (Doc. 92-2 at 210.) This statement is hearsay within hearsay, and Hamner has not produced any other evidence demonstrating personal knowledge; therefore, the Court does not consider this in its analysis.

All of these interactions were offensive to Hamner. Henson denied that these interactions occurred. Mays investigated all of Hamner's allegations concerning Henson and found them to be meritless. Hamner was informed of these conclusions on September 1, 2017.

While Mays investigated Hamner's allegations against Henson, TCSS's investigation into Hamner's 504 Plans revealed irregularities. Defendants state that 504 Teams hold meetings to discuss 504 Plans. During these meetings, attendees must sign forms stating whether they agree or disagree with the proposed plans. Defendants discovered that Hamner used pre-signed and postdated forms instead of having all members sign the plans during the meeting. Hamner states that she was encouraged to do this by Hurst, which he denies. Defendants assert that Hamner photocopied these pre-signed forms and used them on eighteen occasions to indicate that team members approved of 504 Plans, and that in many instances the required meetings never took place. TCSS also states that Hamner used these forms without the other team members' permission.[13] Additionally, TCSS states that Hamner

---

[13] Hamner disputes this, and states she used these forms with their permission. However, she only offers inadmissible evidence to support the proposition that both Henson and Mason knew that they were signing blank forms to be used for multiple 504 Plans. In her answers to interrogatories, Hamner quotes from unidentified documents to support this contention. These documents have not been produced as part of the parties' evidentiary material, thus the Court has no way of evaluating this evidence. Defendants have submitted affidavits from Henson and Mason

changed language on the meeting notice forms, which TCSS argues discouraged parents from participating in 504 Plan meetings. Davie also states that the investigation revealed that Hamner mishandled confidential student records, which she disputes.

On September 7, 2017, Davie, Mays, Hamner, and Hamner's Alabama Education Association representative participated in a meeting regarding her 504 Plans. Hamner admitted to having used pre-signed and postdated signature pages, stating that this was common practice among 504 Teams throughout TCSS. Hamner also stated that she had been engaged in this practice at HMS prior to *Hamner I*, as the assistant principal at HMS supported using pre-signed and dated forms for 504 Plans.[14] Hurst reviewed and approved Hamner's 504 Plans from HMS and CRMS.

---

where they attest that they did not give permission to Hamner to photocopy and use pre-signed forms. Thus, the Court can only consider the affidavits in its analysis.

[14]    TCSS objects to Hamner's assertion stating that this is hearsay and that it violates the "dead man's rule." (Doc. 130 at 4.) Hamner is stating what she believes was common practice regarding 504 Plans, and this is not hearsay. While Hamner's testimony may or may not be credible, the Court's role is to determine whether there are any disputed material facts such that summary judgment should be denied. Weighing the credibility of witness testimony is properly determined by a jury, not the Court.

Concerning the "dead man's rule," the Court is unclear as to what TCSS is referring as there is no such rule in the Federal Rules of Evidence and TCSS does not cite to any rule or statute in its brief. Alabama has a "dead man's statute," *see* Ala. Code § 12-21-163, but this was abrogated by the passage of Rule 601 of the Alabama Rules of Evidence. *See* Ala. R. Evid. 601 ("Every person is competent to be a witness except as otherwise provided in these rules."); *Schoenvogel ex rel. Schoenvogel v. Venator Grp. Retail, Inc.*, 895 So. 2d 225, 258 (Ala. 2004) (recognizing that Alabama's dead man statute "has been superseded by Rule 601, Ala. R. Evid."). Even if Alabama's

TCSS disputes this assertion, pointing out that the plans Hurst reviewed were copies that "would not show that signatures were not original signatures," thus he would have been unaware that Hamner was using pre-signed forms. (Doc. 130 at 3.) Hamner states that Hurst supported this practice as well, which he denies.

Hamner believes her 504 Plans were suddenly scrutinized because of her participation in *Hamner I*. Hamner asserts that Reba Box, the previous chairperson at CRMS, submitted altered forms as part of her 504 Plans, and she was not investigated and terminated for this.[15] Additionally, Hamner states that Brad

---

dead man's statute was still good law, it would be inapplicable here as all of the claims against TCSS arise under federal statutes. *See* Fed. R. Evid. 601 (providing that, in diversity cases, "state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision"). Furthermore, even if this matter was before the Court under diversity jurisdiction and Alabama's dead man's statute had not been superseded, the statute would still be inapplicable as it only applies to cases where "(1) the estate of the deceased [is] interested in the outcome of the suit; (2) the witness [has] a pecuniary interest in the result of the proceedings; and (3) the testimony of the witness … relates to a personal transaction with the decedent." *Schoenvogel*, 895 So.2d at 243 (quoting *Bank of the Se. v. Koslin*, 380 So.2d 826, 829 (Ala. 1980)). Accordingly, all of TCSS's objections to Hamner's evidence based on the "dead man's rule" are meritless.

[15]    While TCSS disputes this fact, it is worth noting that they do not dispute the accuracy of Hamner's assertion. TCSS states that Hamner is speculating that TCSS never disciplined another employee because of their 504 Plans. Documents in Defendants' evidentiary material, however, support Hamner's assertions that other employees submitted altered forms and were not terminated for that. (*See* doc. 83-2 at 62 & 89; doc. 83-3 at 26.)

Also, Hamner has personal knowledge as to Reba Box's 504 Plans, and also asked for those Plans in her requests for production. (*See* doc. 92-3 at 5.) Hamner asserts that TCSS produced three 504 Plans, when Hamner knows there were approximately twenty that should have been produced. (*See* doc. 92-1 at 25 ¶71.) TCSS argues that Hamner's failure to introduce into evidence the referenced 504 Plans violates the best evidence rule; however, an original document is not required when "the party against whom the original would be offered had control of the original;

Armstrong, the chairperson of the 504 Team at another TCSS school, submitted altered forms as well.[16]

At the conclusion of the investigation, Hamner received a letter on September 14, 2017, stating that Davie was recommending that TCSS terminate her employment. Davie informed Hamner that she had the right to request a hearing before TCSS on this matter, which she did. After the hearing, TCSS voted to terminate her employment. Hamner appealed her termination, and the decision was affirmed. TCSS reported her termination to the Alabama Department of Education. After Hamner was terminated, she filed an EEOC charge, which is the basis of the present lawsuit.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[17] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a

---

was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing." Fed. R. Evid. 1004.

[16]     TCSS objects, stating that Hamner's statement violates the best evidence rule. Although Hamner does not directly cite to this evidentiary material, the altered form to which Hamner refers is included in Defendants' joint evidentiary submission. (*See* doc. 83-4 at 36–38.)

[17]     A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and a "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay*, 358 F.3d

859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (per curiam). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## IV.   PRELIMINARY MATTERS

Defendants have raised substantial challenges to Hamner's briefing of the summary judgment motions. The Court will address each challenge in turn.

### A. TCSS's Motion for Reconsideration (Doc. 90)

On October 19, 2020, Hamner filed a Motion for Extension of Time to File Response. (Doc. 88.) The Court granted this extension. (*See* doc. 89.) TCSS filed a motion asking the Court to reconsider its order granting the extension of time. (*See* doc. 90.) The Court prefers to rule on the summary judgment motions on the merits, thus it is taking into consideration the extensive briefing for these motions, including

briefs filed after the initial deadline for responses and replies. Accordingly, TCSS's motion is due to be denied.

## B. Defendants' Motions to Strike Plaintiff's Response Briefs (Docs. 98, 101, 114, & 119)

Hamner filed her original response briefs on November 2, 2020 (docs. 94 & 95). Her briefs failed to comply with the Court's Uniform Initial Order (doc. 24). Hamner did not include a statement of disputed and undisputed facts. As such, Defendants filed motions to strike her response briefs. (Docs. 98 & 101.) The Court granted Hamner leave to file new response briefs that complied with the Court's Order. (*See* doc. 104.) Hamner submitted reformatted response briefs that corrected the primary deficiencies in her original submissions. (*See* docs. 111 & 112.) Accordingly, Defendants' motions regarding Hamner's original response briefs are due to be terminated as moot.

As to Defendants' motions to strike Hamner's reformatted briefs, the Court agrees that Hamner does not fully comply with the Court's Order; however, Hamner addressed the primary issues present in her original briefs. Hamner's reformatted briefs have statements of disputed and undisputed facts. While Defendants take issue with Hamner's evidentiary support for many of these statements, the Court will discuss those objections separately, and they are not such that they warrant

striking her briefs. Accordingly, Defendants' motions (docs. 114 & 119) are due to be denied in part.

Defendants also argue that Hamner's reformatted briefs should be struck for failure to comply with page limitations for briefs. After Defendants filed their motions to strike, the Court granted Hamner's request to exceed the page limitation for her briefs (*see* doc. 123); therefore, Defendants' motions (docs. 114 & 119) are due to be terminated as moot in part.

### C. TCSS's Motion to Deem Statements of Facts Admitted (Doc. 115)

TCSS argues that Hamner's failure to strictly comply with the Court's Uniform Initial Order should be grounds for the Court to deem as admitted TCSS's statement of facts. TCSS objects to Hamner's responses to their undisputed statement of facts as well as to her statements of facts. While the Court acknowledges that Hamner did not fully comply with the Court's Order, this did not prejudice TCSS. TCSS asked for and was granted additional pages in which to reply to Hamner's response brief. (*See* docs. 125 & 127.) As TCSS was able to fully respond to Hamner's statements of disputed and undisputed facts, the Court declines to deem as admitted TCSS's statement of facts.

TCSS also argues that Hamner's failure to participate in the statement of undisputed facts in the parties' Joint Status Report should mean that those facts are

deemed admitted. The Joint Status Report is meant to be a tool to aid the parties as they draft their dispositive motions and is not a substitute for statements of disputed and undisputed facts in their substantive motions. The Court denied Hamner an extension of time in order to file her portion of the Joint Status Report. (*See* doc. 80.) The Court did not do so to allow Defendants to take advantage of Hamner's delay in participating in the Joint Status Report, but rather to keep the summary judgment briefing on schedule. As such, the Court does not deem the facts in the Joint Status Report as undisputed for the purposes of summary judgment. Accordingly, TCSS's motion is due to be denied.

### D. Defendants' Motion to Strike Evidentiary Material (Docs. 96, 97, 102, 103, 117, 118, 120)

Defendants filed motions to strike Hamner's declaration and answers to interrogatories after Hamner filed her initial response briefs. (*See* docs. 96, 97, 102 & 103.) After Hamner filed her reformatted response briefs, Defendants filed renewed motions to strike. (*See* docs. 117, 118 & 120.) TCSS's Motion to Strike Plaintiff's Declaration (doc. 96); TCSS's Motion to Strike Plaintiff's Answers to Interrogatories (doc. 97); and the Individual Defendants' Motion to Strike Plaintiff's Declaration (doc. 103) are due to be terminated as moot as they were filed in response

to Hamner's initial submissions and Defendants filed renewed motions after Hamner submitted her reformatted briefs.

Defendants argue that Hamner's declaration or portions of her declaration should be stricken. (*See* docs. 117 & 120.) Defendants object to portions of Hamner's declarations, generally arguing that her statements are not based on personal knowledge; are irrelevant and immaterial; contain inadmissible hearsay; are conclusory; violate the best evidence rule; and violate the Dead Man's Statute. The Court has already addressed the majority of these objections.[18] The Court does not consider irrelevant or immaterial evidence in its analysis, and it disregards statements made by all parties that are conclusory. The Court also does not consider inadmissible hearsay and evidence that cannot be reduced to admissible form by trial. Finally, the Court does not consider evidence that has no basis in personal knowledge or that violates the best evidence rule; however, the Court denies the majority of Defendants objections on these bases.[19] Furthermore, as previously explained, TCSS's objections based on the Dead Man's Statute are inapplicable in this matter and are due to be denied. Accordingly, Defendants' motions (docs. 117 & 120) are due to be terminated as moot in part and denied in part.

---

[18]     *See generally* Part II.

[19]     *See generally id.*

Defendants also seek to strike Hamner's answers to interrogatories, arguing that her answers are not based on personal knowledge, are "rife with hearsay, conjecture, speculation," and are conclusory. (Doc. 118 at 3 ¶8.) Many of Hamner's answers to interrogatories are based on personal knowledge and refer to admissible evidence or evidence that may be reduced to admissible form by trial. Again, the Court does not consider irrelevant, immaterial, and inadmissible evidence in its analysis. Accordingly, Defendants' motions (docs. 102 & 118) are due to be terminated as moot in part and denied in part.

## V.   DISCUSSION

Hamner brings four types of claims against Defendants. First, Hamner claims she was retaliated against because of her participation in *Hamner I* and because of her subsequent reports of sexual harassment. Second, Hamner claims she was discriminated against on the basis of sex. Third, Hamner claims she was subjected to a sexually hostile work environment. Fourth, Hamner claims she was a victim of battery. Defendants have moved for summary judgment on all claims.

### A. Discrimination Claims

Title VII prohibits, among other conduct, "discriminat[ion] against any individual with respect to [her] terms, conditions, or privileges of employment,

because of such individual's race [or] sex." 42 U.S.C. § 2000e-2(a)(1). "[A] plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence." *Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." *Id.*

Absent direct evidence of sex discrimination or retaliation, such as specific statements made by the employer's representatives, a plaintiff may demonstrate circumstantial evidence of discrimination through the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).[20] Under this framework, the aggrieved employee creates a presumption of unlawful discrimination by first establishing a *prima facie* case of discrimination. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). The burden then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253). If the employer proffers a legitimate, nondiscriminatory reason, the burden returns to the employee to prove

---

[20]     "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir. 1989). Because Hamner has not offered any direct evidence of discrimination, the Court addresses her claims under the standards applicable to circumstantial evidence of discrimination. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).

that the employer's reason is a pretext for unlawful discrimination. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008).

Although the *McDonnell Douglas* framework is one way of showing discriminatory intent, it is not the only way to show discriminatory intent in a Title VII discrimination claim. *See Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "[T]he plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.*

## I. Retaliation

Hamner claims that she was retaliated against by Defendants for bringing *Hamner I* and for opposing discriminatory practices at CRMS. A plaintiff successfully establishes a *prima facie* case of retaliation if she demonstrates that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See, e.g.*, *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010).

To prove an adverse employment action in the context of a retaliation claim, the "plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning that "it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); *see also Crawford*, 529 F.3d at 974. An adverse employment action need not be as serious as outright termination. *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). It may also include "adverse actions which fall short of ultimate employment decisions," such as written reprimands. *Id.* at 1455–56. The Eleventh Circuit has noted that "the cumulative weight of numerous individual incidents can be considered in determining whether the employee experienced materially adverse action." *Putman v. Sec'y., Dep't of Veterans Affs.*, 510 F. App'x 827, 831 (11th Cir. 2013)[21] (per curiam) (citing *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)); *see also Wideman*, 141 F.3d at 1456.

To prove a causal link between the protected activity and the adverse employment action, a plaintiff must show that but-for the employer's desire to retaliate, she would not have suffered the adverse employment action. *Booth v. Pasco Cnty.,* 757 F.3d 1198, 1207 (11th Cir. 2014) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 363 (2013)). A plaintiff can establish a causal connection if she

---

[21]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

can show "sufficient evidence" that the employer knew of her statutorily protected activity and "that there was a close temporal proximity between this awareness and the adverse . . . action." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003)); *see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (holding that the temporal proximity must be "very close"). A plaintiff may also establish a causal connection even if "there was a significant time gap between the protected activity and the adverse action" if there is sufficient "additional evidence to demonstrate a causal connection, such as a pattern of antagonism or that the adverse action was the first opportunity for the employer to retaliate." *Ward v. UPS*, 580 F. App'x 735, 739 (11th Cir. 2014)[22] (per curiam); *see also Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) ("The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" (quoting *Olmstead v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)).

### a. TCSS—Counts I, III, IV

"[A] plaintiff must use the remedial provisions of § 1983 to enforce against state actors the rights created by § 1981." *Butts v. Cnty. of Volusia*, 222 F.3d 891, 892

---

[22]    *See id.*

(11th Cir. 2000). Section 1981 "encompasses claims of retaliation." *Bryant v. Jones*, 575 F.3d 1281, 1301 (11th Cir. 2009) (quoting *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008)). "Title VII and [§] 1983 claims have the same elements where the claims are based on the same set of facts [and] are subject to the same legal analysis." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (alteration in original) (quoting *Rioux v. City of Atl.*, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008)). Accordingly, the Court will discuss Hamner's § 1983 and Title VII claims together.

TCSS does not dispute that Hamner satisfies the first two elements of her *prima facie* case of retaliation in that she engaged in statutorily protected activities, and she suffered an adverse employment action in that she was terminated. TCSS argues that there is no causal link between Hamner's termination and *Hamner I* or her "protected opposition to and complaints about employment practices." (Doc. 85 at 14.)

Hamner argues that her termination was not the only adverse employment action she suffered, and that there is a causal link between her protected activity and the adverse actions. Hamner argues that the following constitute adverse employment actions: (1) being tricked into submitting a voluntary transfer request separate from her settlement agreement in *Hamner I*; (2) her "unassignment" from

HMS and "reassignment" to a temporary position at CRMS; (3) being forced to work in an office at CRMS that negatively affected her health; (4) being forced to work under Henson at CRMS, who she accused of sexually harassing her; and (5) having her 504 Plans investigated only after she engaged in protected activity.[23]

The test for whether an action is materially adverse is whether a reasonable employee would be dissuaded from engaging in protected activity. The manner in which Hamner was transferred might well dissuade a reasonable employee from making or supporting a charge of discrimination. Likewise, the investigation into Hamner's 504 Plans and her ultimate termination could also dissuade a reasonable employee from making or supporting a charge of discrimination. Viewing all of the incidents cumulatively and in the light most favorable to the nonmoving party, a reasonable jury could conclude that the series of actions taken together are materially adverse as well.

TCSS also challenges whether there is a causal link between Hamner's participation in *Hamner I*, her reports of discrimination at CRMS, and her ultimate

---

[23]    Hamner also alleges that she suffered an adverse employment action when a witness deposed during *Hamner I* threatened to sue her for involving her in the litigation. There is no evidence presented by the parties to support that TCSS or the Individual Defendants had anything to do with this witness's statement. Hamner argues that because Defendants took no action to address the witness's threats, they tacitly approved of the threat. Defendants had no control over the witness, and no reasonable jury could view Defendants as adopting the witness's "retaliatory threat." (*See* doc. 111 at 46.)

termination. Hamner describes multiple incidents over the course of a year, which are temporally linked to *Hamner I* and to her EEOC charge in the instant case. Furthermore, Hamner has presented sufficient evidence such that a reasonable jury could conclude that there is a "pattern of antagonism" beginning with her transfer to CRMS and concluding with her termination. As such, Hamner has established a *prima facie* case of retaliation.

Next, the burden of production shifts to TCSS to provide a legitimate, nondiscriminatory reason for the adverse actions. *Brown*, 597 F.3d at 1181. TCSS states that Hamner's 504 Plans were investigated because of a report that there were irregularities with her forms, and that it terminated Hamner's employment because she modified and falsified 504 Plans at CRMS. Thus, TCSS has met its burden.

The burden then shifts back to Hamner to show that TCSS's legitimate, nondiscriminatory reasons were pretextual. *Crawford*, 529 F.3d at 976. A "plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Burdine*, 450 U.S. at 256). In determining whether the proffered reason is pretextual, courts are not in the "business of adjudging whether employment decisions are prudent or fair," but

rather "whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).

A reasonable jury could conclude that TCSS's legitimate, nondiscriminatory reasons are pretextual. Hamner completed her 504 Plans in the same manner before *Hamner I*, and it was not until after she engaged in a protected activity that her practices were suddenly scrutinized. Additionally, Hamner argues that TCSS has shifting stated purported reasons for her termination. TCSS asserts that she was terminated for modifying and falsifying her 504 Plans, but also argues that she was terminated for emailing confidential student records.[24] Furthermore, Hamner presented evidence of other employees who also altered forms without being terminated. Hamner has presented sufficient evidence from which a reasonable jury could conclude that TCSS's explanations are pretextual as to all counts of retaliation. Accordingly, TCSS's motion is due to be denied as to Counts I, III, and VI.

---

[24] TCSS "adopts and incorporates" any positions the Individual Defendants take that "apply to the claims against TCSS and its defenses thereto." (Doc. 85 at 30.) The Individual Defendants state that emailing confidential student records was one of the reasons Hamner was terminated. (Doc. 87 at 16.) As TCSS adopts and incorporates this argument, this shifting stated purported reason can also go to pretext.

### b.  *The Individual Defendants—Count I*

Hamner also asserts claims of retaliation against the Individual Defendants in their individual capacity under § 1983. The Individual Defendants argue that (1) they are entitled to qualified immunity; and (2) they lacked the authority to terminate Hamner, thus they cannot be responsible for any adverse employment actions. Hamner counters, stating that (1) the Individual Defendants waived a defense of qualified immunity by waiting until summary judgment to assert it; (2) qualified immunity does not apply to Hamner's claims against the Individual Defendants for equitable relief; (3) Davie and Mays were acting outside of their discretionary authority when they suspended and terminated her; (4) Hamner's right to be free from retaliation is clearly established.

"To be entitled to qualified immunity, a public official 'must first prove that he was acting within his discretionary authority when the allegedly wrongful acts occurred.'" *Dang ex. rel. Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1279 (11th Cir. 2017) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). To show that he was acting within his discretionary authority, the public official must prove that his actions "(1) were undertaken 'pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" *Id.* (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).

After a public official shows that he was acting within his discretionary authority, the burden shifts to the plaintiff to show both that "the defendant violated a constitutional right" or federal statute, and that "this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). In order for a right to be clearly established, there must be "(1) case law with indistinguishable facts"; "(2) a broad statement of principle within the Constitution, statute, or case law"; "or (3) conduct so egregious that a constitutional right was violated even in the total absence of case law." *Hill v. Cundiff*, 797 F.3d 948, 979 (11th Cir. 2015) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)). To determine if precedent clearly establishes a right, it "must be particularized to the facts of the case" and "should not be defined at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam); *see also Harbert Inter., Inc. v. James*, 157 F.3d 1271, 1284 (11th Cir. 1998) (stating that "clearly established principles of law will seldom if ever suffice to strip a defendant of qualified immunity").

First, the Individual Defendants did not waive their defense of qualified immunity by first raising it on summary judgment. Contrary to Hamner's contention, there were no claims to which the Individual Defendants could have raised a defense of qualified immunity until Hamner filed her Second Amended

Complaint (doc. 45) on June 8, 2020. While the Individual Defendants could have raised a defense of qualified immunity when they filed their Motion to Dismiss (doc. 54), they were not required to do so. *See, e.g.*, *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) ("Although 'the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss.'" (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Furthermore, allowing the Individual Defendants to raise qualified immunity at summary judgment did not prejudice Hamner from being able to adequately address this defense. She was granted additional pages and multiple extensions of time in which to file her response brief. As such, the Court properly considers the Individual Defendants' defense of qualified immunity.

Second, Hamner has no claims for equitable relief against the Individual Defendants as the only claim against them is for retaliation in their individual capacities pursuant to § 1983. In her Second Amended Complaint, Hamner sought equitable relief from the Individual Defendants in their official capacities and damages from the Individual Defendants in their individual capacities. The Court previously dismissed Hamner's claims against the Individual Defendants in their official capacities. (*See* doc. 78 at 13 n.6.) Furthermore, under § 1983, Hamner can only sue the Individual Defendants in their "individual capacities for money

damages." *Jones v. Buckner*, 963 F. Supp. 2d 1267, 1281 (N.D. Ala. 2013). As Hamner does not have any claims for equitable relief against the Individual Defendants, they may assert qualified immunity for claims against them in their individual capacities under § 1983.

Third, the Individual Defendants were acting within their discretionary authority for every action Hamner asserts constitutes retaliation. Hamner argues that Davie and Mays were acting outside of their discretionary authority when they "suspended" her and effectively terminated her.[25] (Doc. 112 at 43–45.) Hamner was not suspended but was placed on administrative leave with pay by Davie as authorized by statute. *See* Ala. Code § 16-24C-9. Furthermore, Davie and Mays were incapable of terminating her employment as, pursuant to Alabama law, only TCSS has that authority. *See* Ala. Code § 16-8-23. Hamner cites to *Harbert International* for the proposition that "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." 157 F.3d at 1282 (quoting *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997)). Here, Hamner's administrative leave and termination were governed by statute. Thus, it is clear that Davie's actions were within his

---

[25]     Hamner does not present evidence that Henson's actions relative to her retaliation claim were outside of his discretionary authority.

discretionary duties.  Neither Mays nor Henson are accused of any activities that fall outside of their discretionary authority. Thus, the Individual Defendants have met their burden for demonstrating why they are entitled to qualified immunity. The burden, therefore, shifts to Hamner to show that they violated a right that was clearly established.

Before the Court determines if Hamner's right to be free from retaliation is clearly established, it first determines whether Hamner has established a *prima facie* case of retaliation. As to Henson, she has not. No reasonable jury could conclude that Henson took any adverse employment actions against Hamner. Thus, Hamner has not met her burden to establish a *prima facie case* of retaliation against Henson. As Henson did not violate Hamner's right to be free from retaliation, he is entitled to qualified immunity and the Individual Defendant's motion is due to be granted as to Henson.

Concerning Mays, Hamner makes no allegations against her that could constitute an adverse employment action. As discussed previously, Mays could not suspend or terminate Hamner, nor did she do so. Mays properly investigated Hamner's complaints concerning Henson, and that is the extent of Mays involvement in this matter. No reasonable jury could conclude that this constitutes an adverse employment action. Hamner has not established a *prima facie* case of

retaliation against Mays, thus Mays has not violated Hamner's right to be free from retaliation. Accordingly, the Individual Defendant's motion is due to be granted as to Mays.

There are a series of adverse actions from which a reasonable jury could infer a pattern of antagonism on the part of TCSS; however, as presented, only two of these actions are linked to Davie. First, Davie recommended that Hamner submit a voluntary transfer request while *Hamner I* was pending. Second, Davie recommended that TCSS terminate Hamner's employment. The first action is temporally linked to *Hamner I*. The second action is not sufficiently temporally linked to *Hamner I* to demonstrate a causal link as it took place close to a year after that matter was settled. Hamner has not alleged any facts suggesting that Davie was involved in any continuing adverse employment actions such that his recommendation to TCSS could be linked back to *Hamner I*, which is the only basis for her § 1983 claim for retaliation. Thus, assuming that Davie's suggestion and his recommendation that TCSS transfer Hamner to CRMS does establish a *prima facie* case of retaliation, the Court examines whether Hamner has met her burden to show this action violated a clearly established right, which she has not done.

Hamner cites to a single case for the proposition that she has a clearly established right to be free from retaliation. *See Bowman v. City of Birmingham*, 777

F. App'x 416 (11th Cir. 2019) (per curiam).[26] However, the facts of *Bowman* would not put a reasonable official on notice that Davie's action in this matter would constitute retaliation. In *Bowman*, the plaintiff complained that black employees were being disciplined more frequently than white employees for the same behavior. After making that complaint, the plaintiff was "stripped of his supervisory duties and authority over the staff," reprimanded, and threatened with disciplinary action. *Id.* at 418. The City of Birmingham investigated the plaintiff's allegations, during which time the plaintiff was temporarily transferred to an entry-level job. After the investigation was completed, the plaintiff was transferred back to his original job. The plaintiff continued to make other complaints about discriminatory conduct. Shortly thereafter, the plaintiff was demoted.

These facts are distinguishable from the present case in that Davie did not strip Hamner of any supervisory duties; Hamner was not reprimanded or threatened with disciplinary action for reporting alleged disparate treatment; nor was she involuntarily transferred and demoted. Hamner was voluntarily transferred, and her job responsibilities at CRMS were exactly the same as her job responsibilities at HMS. While Davie recommended Hamner submit a voluntary transfer request and he recommended to TCSS that they approve her transfer, he did not involuntarily

---

[26]     *See supra* note 21.

transfer her nor did he demote her. As this matter is factually distinguishable from *Bowman*, this case does not provide notice to Davie that his actions could be considered retaliatory.

Additionally, the Court cannot say that Davie's actions were so obviously retaliatory that he should be deprived of qualified immunity. While there is no question that Hamner has a right to be free from retaliation, she has not met her burden of demonstrating that Davie would be on notice that his actions would violate a clearly established right. Accordingly, Davie is entitled to qualified immunity, and the Individual Defendants' motion is due to be granted as to Davie, Mays, and Henson.

## II.    Disparate Treatment—Count IV

Hamner also brings a disparate treatment claim against TCSS. A plaintiff establishes a *prima facie* case of intentional discrimination because of sex by showing "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis*, 918 F.3d at 1220–21. To satisfy the fourth prong of the *prima facie* case, the proffered comparator must be similarly situated to the plaintiff "in all material respects." *Id.* at 1224. As the Eleventh Circuit has explained, "a valid

comparison will turn not on formal labels, but rather on substantive likenesses." *Id.* at 1228. While the precise "similarity" is "to be worked out on a case-by-case basis," a similarly situated comparator "will have engaged in the same basic conduct (or misconduct) as the plaintiff"; "will have been subject to the same employment policy"; "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor"; and "will share the plaintiff's employment or disciplinary history." *Id.* at 1227–28.

It is undisputed that Hamner satisfies the first three elements of her *prima facie* case. TCSS argues that Hamner has not presented any similarly situated comparators outside her protected class. Hamner counters that she has produced a similarly situated comparator in Armstrong, who is a male who also altered forms for his 504 Plans. While Hamner has offered a comparator who was subject to the same employment policy and who also reported to Hurst, it is not clear to the Court that he engaged in the same basic misconduct or that he shared Hamner's employment and disciplinary history. While Armstrong did alter forms, he did not do so in the same manner as Hamner. Furthermore, Hamner has produced no admissible evidence to show that Armstrong was or was not disciplined for altering his forms. Thus, Hamner has failed to meet her burden of producing a similarly situated

comparator outside her protected class who was treated differently. Accordingly, Hamner has not established a *prima face* case of disparate treatment because of sex.

Even if Hamner had produced a valid comparator, TCSS offered a legitimate, nondiscriminatory reason for terminating her—she altered and falsified her 504 Plans and forms. Thus, the burden shifts back to Hamner to demonstrate that TCSS's reason for terminating her was pretextual for discriminating against her because of her gender.

Hamner has presented no evidence that her termination for altering and falsifying forms was pretextual for discriminating against her because of her gender. Hamner argues that TCSS's failure to follow its own policy when it did not provide her with notice of her transfer to CRMS is evidence of pretext; however, Hamner has provided no evidence to suggest that this was motivated by discriminatory animus based on her gender as opposed to retaliation for her participation in protected conduct. In short, all of Hamner's arguments concerning pretext are in the context of her retaliation claims, not her disparate treatment claim. Here, Hamner has not met her burden of establishing pretext. Accordingly, TCSS's motion as to Count IV is due to be granted.

### III.    Sexually Hostile Work Environment—Count V

Hamner brings a sexually hostile work environment claim against TCSS based on alleged sexual harassment by Henson at CRMS.[27] A separate violation of Title VII occurs when "the workplace is permeated with [sexually] discriminatory intimidation, ridicule, and insult[] that is sufficiently severe or pervasive to alter the terms and conditions of the victim's employment and create an abusive working environment." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2011) (second alteration in original) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

To succeed on a sexually hostile work environment claim, a plaintiff must prove that: (1) she belongs to a protected class; (2) she has been "subject[ed] to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature"; (3) the harassment was because of the plaintiff's sex; (4) "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) she has "a basis for holding the employer liable." *Reeves v.*

---

[27]      In her response brief, Hamner asserts that she was also subject to a sexually hostile work environment at HMS. Those allegations are not properly before the Court in this matter as the hostile work environment at HMS was not part of Hamner's EEOC charge or her Second Amended Complaint. Hamner constrained her allegations to her time at CRMS. As such, the Court does not consider whether Hamner was subjected to a sexually hostile work environment while at HMS.

*C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc) (quoting

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc)).

To establish the fourth element, the plaintiff must show that the conduct is

both objectively and subjectively "severe or pervasive." *Mendoza*, 195 F.3d at 1246.

In evaluating the objective severity of the harassment, the court considers: "(1) the

frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is

physically threatening or humiliating, or a mere offensive utterance; and (4) whether

the conduct unreasonably interferes with the employee's job performance." *Adams*

*v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1250–51 (11th Cir. 2015) (quoting *Mendoza*,

195 F.3d at 1246).

It is undisputed that Hamner belongs to a protected class. TCSS disputes that

she was subjected to unwelcome sexual harassment; and, that if she was, it did not

alter the terms and conditions of employment and create a discriminatorily abusive

working environment.

No reasonable jury could find that the alleged harassment suffered by Hamner

was objectively severe or pervasive such that it altered the terms and conditions of

her employment. Hamner recounts two incidents in which Henson touched her hand

in a manner that made her uncomfortable and a third incident in which he pressed

his body up against her in an unwelcome and sexual manner. While it is clear Hamner

found this behavior to be subjectively severe or pervasive, this is insufficient to satisfy the objective standard. *See, e.g.*, *Dar Dar v. Assoc. Outdoor Club, Inc.*, 248 F. App'x 82, 86 (11th Cir. 2007) (per curiam) (finding that "two instances of employees touching [the plaintiff's] buttocks . . . and two risqué comments" were insufficient to establish a hostile work environment); *Mendoza*, 195 F.3d at 1247 (finding that a supervisor rubbing his hip against the plaintiff "while touching her shoulder and smiling"; following the plaintiff and staring at her "in a very obvious fashion"; making sounds while staring at the plaintiff's groin; and making a sexual comment to the plaintiff were insufficient to establish "severe or pervasive conduct sufficient to alter [the plaintiff's] terms or conditions of employment"). Accordingly, TCSS's motion is due to be granted as to Hamner's sexually hostile work environment claim.

## B. Battery—Count VII

Hamner also brings a state law claim of battery against Henson. This Court, like all federal courts, is a court of "limited jurisdiction." *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1134 (11th Cir. 2013). It is authorized to hear only those cases falling within "one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016). A federal

court with subject matter jurisdiction over a claim also has "supplemental jurisdiction" over state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). To be part of the same case or controversy, "[t]he state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Exercising supplemental jurisdiction is discretionary, and the court "may decline to exercise supplemental jurisdiction over a claim [when] the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam) (acknowledging that district courts are "encouraged . . . to dismiss any remaining state law claims when . . . the federal claims have been dismissed prior to trial").

The only claim against Henson over which the Court has original jurisdiction is Hamner's claim of retaliation brought pursuant to § 1983. The Court determined that summary judgment on that claim is due to be granted for Henson. Furthermore, even if Hamner's battery claim could be construed as deriving from a common nucleus of operative fact as Hamner's sexually hostile work environment claim against TCSS, the Court also determined that summary judgment on Hamner's sexually hostile work environment claim is due to be granted. As there is no

remaining claim over which the Court has original jurisdiction that is part of the "same case or controversy" as the battery claim against Henson, the Court declines to exercise supplemental jurisdiction over the state law battery claim. Accordingly, Count VII is dismissed without prejudice, and the Individual Defendants' motion is due to be terminated as moot in part.

## VI.  Conclusion

For the reasons stated above, TCCS's Motion for Summary Judgment (doc. 84) is due to be granted in part as to Counts IV and V and denied in part as to Counts I, III, and VI. The Individual Defendants' Motion for Summary Judgment (doc. 86) is due to be granted in part as to Count I and terminated as moot in part as to Count VII. Count VII is due to be dismissed. TCSS's Motion for Reconsideration (doc. 90) is due to be denied. Defendants' Motions to Strike Plaintiff's Response Briefs (docs. 98 & 101) are due to be terminated as moot. Defendants' Motions to Strike Plaintiff's Response Briefs (docs. 114 & 119) are due to be terminated as moot in part and denied in part. TCSS's Motion to Deem Statements of Facts Admitted (doc. 115) is due to be denied. Defendants' Motions to Strike Evidentiary Material (docs. 96, 97, & 103) are due to be terminated as moot. Defendants' Motions to Strike Evidentiary Material (docs. 102, 117, 118, & 120) are due to be terminated as moot in part and

denied in part. A separate order consistent with this opinion will be entered contemporaneously herewith.

 DONE and ORDERED on February 17, 2021.

L. Scott Coogler<br>
United States District Judge

202892