FILED
2021 Jun-10  PM 01:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

SHANNON HAMNER,                )
     Plaintiff,               )
vs.                           )
                  )
                  )     CIVIL ACTION NO.:
TUSCALOOSA COUNTY             )
SCHOOL SYSTEM, ET AL.,        )     7:18-cv-1838-LSC
     Defendants.              )
                  )
                  )
                  )

## PRETRIAL ORDER

A pretrial conference was held in the above case on <u>June 10, 2021</u>, wherein, or as a result of which, the following proceedings were held and actions taken:

1. <u>APPEARANCES:</u>  Appearing at the conference were:

    For   Shannon Hamner: <u>Barry V. Frederick</u>

    For   Tuscaloosa County School System: <u>Ray Ward</u>

    For   Tuscaloosa County School System: <u>Thomas W. Powe, Jr.</u>

2. <u>JURISDICTION AND VENUE:</u>

    a.  The court has subject matter jurisdiction of this action under the following statutes, rules or cases:  28 U.S.C., §1331.

    b.  All jurisdictional and procedural requirements prerequisite to maintaining this action have been met.

c.  Is personal jurisdiction or venue contested?

_____ Yes   __X__  No

3.  <u>PARTIES AND TRIAL COUNSEL</u>:  There are no remaining fictitious

parties.  The parties before the Court and designated trial counsel are

correctly named as set out below:

| <u>PARTIES</u> | <u>TRIAL COUNSEL</u> |
| --- | --- |
| Shannon Hamner | Barry V. Frederick |
| Tuscaloosa County School System | Ray Ward |
| Tuscaloosa County School System | Thomas W. Powe, Jr. |

<u>PLEADINGS</u>:  The following pleadings have been allowed:

A.    Complaint (Doc. 1)

B.    Amendment to Complaint (Doc. 28)

C.    TCSS Answer (Doc. 29)

D.    TCSS Answer to Amended Complaint (Doc. 30)

E.    Second Amended Complaint (Doc. 45)

F.    TCSS Answer to Second Amended Complaint (Doc. 133).

4.  <u>STATEMENT OF THE CASE</u>:

a.  <u>Narrative Statement of the Case</u>.

This case arises out of Plaintiff's employment and the termination of

Plaintiff's employment with Defendant Tuscaloosa County School

System ("TCSS") and Defendants' alleged conduct in connection with same as well as Defendants' alleged conduct toward Plaintiff even after the termination of her employment with TCSS.  At issue are claims of retaliation (including without limitation a retaliatory hostile work environment and retaliation in the termination of Plaintiff's employment and other retaliation in Plaintiff's employment). Defendant denies all claims.

b. Undisputed Facts.

1.     While Plaintiff and Defendants do not agree on many facts, there are some basic facts on which they agree, to-wit: Plaintiff was a long-term tenured employee of TCSS.

2.     During her employment with TCSS, Plaintiff served in various capacities, including Guidance Counselor at Hillcrest Middle School and later at Collins-Riverside Middle School, which were Plaintiff's primary jobs for TCSS when Plaintiff worked at those respective schools.

3.     TCSS is a local agency of the State of Alabama that is responsible for the supervision of public schools in Tuscaloosa County.

4.      Dr. Walter Davie was TCSS' Superintendent of Education during the time that Plaintiff was assigned to Collins-Riverside Middle School and while Plaintiff was moved to that school from Hillcrest Middle School.

5.      Dr. Allison Mays was TCSS' Senior Director of Human Resources for TCSS during the time that Plaintiff was assigned to Collins-Riverside Middle School and while Plaintiff was moved to that school from Hillcrest Middle School.

6.      Clifton "Craig" Henson was TCSS' principal at Collins-Riverside Middle School during the time that Plaintiff was assigned to the school.

7.      On March 30, 2015, while an employee at Hillcrest Middle School, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging that she had been harassed and discriminated against based on her race and sex by TCSS and two of its then employees, and that they had retaliated against Plaintiff for opposing same.

8.      Prior to this lawsuit, Plaintiff filed a lawsuit in this Court in which Plaintiff claimed race-based sexual harassment, discrimination

and retaliation by TCSS and two of its then employees.  In this case, that prior lawsuit is referred to and called "Hamner I".

9.      The parties eventually reached a settlement in Hamner I and that case was dismissed pursuant to the settlement on October 24, 2016.

10.     Section 504 of the Rehabilitation Act of 1973 requires school systems to provide 504 Plans for eligible students to help them receive an education.

11.     Each school within TCSS has a 504 committee that is made up of employees whose responsibility is to formulate a 504 Plan for eligible students in that particular school.

12.     During her time at Hillcrest Middle School and Collins-Riverside Middle School, Plaintiff served as chairperson of the schools' respective 504 committies.

13.     The Collins-Riverside Middle School 504 committee for the 2016-2017 school year included Plaintiff (chair), Clifton Henson, Marlana Mason and Becky Stephens.

14.     Plaintiff, Henson, Mason and Stephens were employees at Collins-Riverside Middle School.

15.     Collins-Riverside Middle School houses students in fifth through eighth grades.

c.   <u>Plaintiff's Claims</u>.

i.   RETALIATION

Plaintiff claims retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and $ U.S.C. § 1981(via § 1983).  Said retaliation included Plaintiff (a) having to work in a retaliatory hostile work environment, (b) tricking Plaintiff into moving from Hillcrest Middle School to Collins-Riverside Middle School while falsely assuring her about her employment at Collins-Riverside Middel School, and in the manner by which she was moved from Hillcrest to Collins-Riverside, (c) in applying heightened scrutiny to Plaintiff's employment, (d) the suspension and termination of Plaintiff's employment  and (e) even post-employment-termination retaliation in Defendants'  trying to get Alabama's Dept of Education to revoke Plaintiff's licenses, which was a vindictive retaliatory attempt to utterly destroy Plaintiff's livelihood and ultimately her eligibility for retirement benefits for which Plaintiff worked toward throughout her entire career, but which was an attempt said State Dept of Education rejected as completely unjustified.  The evidence of Defendants' retaliatory motive is extensive and includes the facts set forth in Plaintiff's re-formatted brief in opposition to TCSS' motion for summary judgment (Doc. 111), which are so lengthy Plaintiff believes

they need not and should not be repeated in a pretrial order.  On these claims,

Plaintiff seeks damages, reinstatement (or front pay, which is appropriate here in

lieu of reinstatement), and injunctive and declaratory relief.  Authorities on which

Plaintiff rely to support these claims are set forth in her reformatted briefs (Docs.

111 & 112 respectively) in opposition to all Defendants' motions for summary

judgment, in Judge's Kallon's prior opinion in this case upholding Plaintiff's

claims as cognizable claims (Doc. 22) and in this Court's opinion (Doc. 136)..

        In support of her claims, Plaintiff expects to prove all facts set forth in

Plaintiff's statements of undisputed facts contained in her re-formatted briefs (Doc.

111  & Doc. 112) in opposition to Defendants' respective motions for summary

judgment, which given their length Plaintiff believes it not appropriate to repeat

any substantial part of her summary judgment briefs in a pretrial order.  Instead

Plaintiff incorporates those facts herein by reference.

**PLAINTIFF SUBMITS THE ISSUES TO BE TRIED ARE**:

>               (1) whether Defendant would have not taken the actions it took
>
>                   toward Plaintiff and would have not treated Plaintiff the way it
>
>                   treated her but for their unlawful motive in retaliation for
>
>                   Plaintiff's protected conduct in pursuing and settling Hamner I;
>
>                   and if so, the appropriate remedies/relief due Plaintiff;

(2)  Plaintiff acknowledges authority standing for the proposition that retaliation claims under § 1983 and Title VII are analyzed pursuant to the same principles of law, but causation standards case base their holdings on each particular statute's causation language, and Plaintiff claims because § 1983 does not contain Title II's particular language that requires "but for" causation for Title VII retaliation claims, "but for" causation is not the appropriate causation standard of proof of retaliation claims under § 1983, which should be the traditional standard of proof of whether retaliation was a substantially motivating factor for Defendant's adverse action(s) toward Plaintiff.  Hence, Plaintiff claims the issues to be tried include whether retaliation was a substantially motivating factor for Defendant's adverse action(s) toward Plaintiff.  Defendant disagrees.

(2) Given Plaintiff's direct evidence of retaliation, whether Defendant met its burden of proving it would have taken the same actions against Plaintiff regardless of its unlawful retaliatory motive; and if not, the appropriate remedies/relief due Plaintiff on her retaliation claims;

(3) A sub issue to be tried as to Plaintiff's claim of retaliation is

whether TCSS took prompt effective remedial action to eliminate

Plaintiff's retaliatory hostile work environment;

**Defendant's Defenses:**

Plaintiff's remaining claim against the Tuscaloosa County

School System ("TCSS") is for damages for Retaliation.  TCSS denies

that it has committed any acts for which Plaintiffs can recover under

any theory set forth in the Amended Complaint.

In count I of her Second Amended Complaint, Plaintiff alleges

that TCSS violated §1983 by terminating her in retaliation for her

opposition to, complaints about and her previous lawsuit regarding

racially discriminatory sexual harassment.  According to Plaintiff's

Second Amended Complaint, she would not have been terminated but

for her prior opposition.  In Count III of her Second Amended

Complaint, Plaintiff alleges that the TCSS violated Title VII by

terminating her in retaliation for her opposition to, complaints about

and her previous lawsuit regarding racially discriminatory sexual

harassment.  In Count VI of her Second Amended Complaint, Plaintiff

alleges that the TCSS violated Title VII by terminating her in

retaliation for her opposition to, complaints about and her previous

lawsuit regarding sexual harassment and a sexually hostile work environment.

The analysis of a claim of retaliation under §1983 is the same as that for a claim under Title VII.  Plaintiff's claim is reviewed under a three-part framework.  Plaintiff must first initially establish a prima facie case.  If she does so, TCSS may then offer a nondiscriminatory reason for its decision.  If the Board presents a nondiscriminatory reason for its decision, Plaintiff then must prove that the reason presented by TCSS is pretextual.  ***Johnson v. Birmingham Bd. Of Ed.***, ___ F. Supp. 3d ____ [2020 WL 5203979] (Sept. 1, 2020) (N. D. Ala. 2020).

In order to establish a prima facie case, Plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and; (3) there is some causal relation between the two events.  ***Johnson***, citing ***Meeks v. Computer Assocs. Int'l***, 15 F.3d 1013, 1021 (11th Cir. 1994).  TCSS acknowledges that Plaintiff engaged in statutorily protected activity by filing an EEOC Charge of Discrimination and subsequent lawsuit (Hamner I) and that Plaintiff's employment was later terminated.

However, TCSS submits that the evidence fails to demonstrate the presence of a causal connection between the two events.

A causal relation between protected expression and an adverse employment action arises when the defendant was aware of the protected expression and took materially adverse action as a result. *Johnson*, citing ***Shannon v. BellSouth Telecomm., Inc.*** 292 F.3d 712, 716 (11th Cir. 2002).  The applicable causation standard is a "but-for causation," which requires "proof that the desire to retaliate was the but-for cause of the adverse action."  *Johnson*, citing ***Univ. of Tex. SW. Med. Ctr. V. Nassar***, 570 U.S. 338, 352 (2013).

If Plaintiff is able to present a prima facie case, the TCSS is then entitled to proffer a legitimate, nondiscriminatory reason for her termination.  *Johnson*, citing ***Tipton v. Canadian Imperial Bank of Commerce***, 872 F.2d 1491, 1494-95 (11th Cir. 1989), and ***Bryant v. Jones***, 575 F.3d 1281, 1308 (11th Cir. 2009).

Once TCSS offers a legitimate, nondiscriminatory reason for the termination of Plaintiff's employment, Plaintiff must then show that the reason given by TCSS was merely a pretext for unlawful discrimination.  *Johnson*, citing ***Bryant v. Jones***, 575 F.3d 1281, 1308 (11th Cir. 2009).  In order to show pretext, Plaintiff must present

"concrete evidence in the form of specific facts." ***Johnson***, citing

***Springszer v. Convergys Customer Mgmt. Grp.***, 509 F.3d 1344, 1348

(11th Cir. 2007).  Mere conclusory allegations and assertions will not

suffice to meet the burden. ***Johnson***, citing ***Texas Dep's of***

***Community Affairs v. Burdine***, 450 U.S. 248, 256 (1981).

TCSS submits that Plaintiff cannot meet her burden of

presenting a prima facie case of retaliation.  The evidence in this case

demonstrates that Plaintiff did, in fact, oppose alleged illegal practices

by TCSS on previous occasions and that Plaintiff's employment was

subsequently terminated.  However, there is no evidence to support

that Plaintiff's employment was terminated because of her protected

activity.  That is to say, there is no evidence that Plaintiff's

employment would not have been terminated but for her protected

activity.

Even if Plaintiff could make a prima facie case, TCSS submits

that its decision to terminate Plaintiff's employment was for a

legitimate, non-discriminatory reason – that Plaintiff improperly

modified 504 Plan forms and attached photocopied signature pages to

504 Plans for disabled students for whom no 504 team meeting was

held in violation of 504 law, regulations and TCSS policy.  Plaintiff

cannot produce evidence of pretext aside from her own conclusory allegations and assertions.

TCSS expects to prove the following facts supporting its defense that it did not retaliate against Plaintiff:

1.     Section 504 of the Rehabilitation Act of 1973 requires school systems to provide 504 Plans for disabled children with qualifying disabling conditions that may include accommodations to help affected disabled children receive an education.

2.     Each school within TCSS has a 504 team that is made up of employees whose responsibility is to formulate a 504 Plan for qualifying disabled children in that particular school.

3.     Parents of qualifying disabled children are also members of the school's 504 team.

4.     Plaintiff was chairperson of the 504 team at Collins-Riverside Middle School.

5.     504 teams are required to meet at least annually to review the existing 504 Plans and, if necessary, to make modifications to the plans.

6.     The 504 teams typically meet near the end of each school year to determine if modifications to 504 Plans are needed for the following year.

7.     The TCSS 504 manual has various forms that are required to be utilized as part of the process.

8.     The 504 chairperson at each school is responsible for scheduling 504 team meetings and notifying parents of the date, time and location of the meetings along with the parents' right to be present and offer input at the meeting.

9.     The 504 manual provides a form to be used to provide notice to the parents.

10.     The 504 manual requires a signature page for each 504 Plan.

11.     Each member of the 504 team who attends a 504 meeting is required to sign the signature page and indicate whether he or she agrees with or disagrees with the 504 Plan.

12.     The Collins-Riverside Middle School 504 team for the 2016-2017 school year consisted of Plaintiff (chair), Clifton Henson, Marlana Mason and Becky Stephens along with the parent or parents of each disabled child with a 504 Plan.

13.     As the end of the 2016-2017 school year neared, Plaintiff scheduled 504 team meetings and sent notice forms to the parents of affected disabled children.

14.     Plaintiff modified the 504 notice form in a way that made it appear to parents that their children's 504 Plans would not be changed whether they attended the meetings or not.

15.     The language that Plaintiff added to the notice form was not approved or authorized.

16.     In early May, two to three weeks ahead of the scheduled 504 team meetings, Plaintiff approached the other members of the 504 team and told them that a particular parent had told her that she would not be attending the 504 team meeting and that she was satisfied with her child's 504 Plan.

17.     Plaintiff then asked each 504 team member to sign the signature page for that student's 504 Plan indicating that they agreed with the Plan.

18.     Each of the team members signed the signature page as requested by Plaintiff.

19.     After obtaining the signature page signed by the other 504 team members, Plaintiff photocopied the signature page and

attached it to eighteen (18) other 504 Plans, making it appear that the 504 team members had attended a meeting for each student and approved of the Plans when, in fact, no such meeting was held.

20.    When a student at Collins-Riverside Middle School successfully completes the eighth grade, he or she then moves to Tuscaloosa County High School to complete his or her education.

21.    When a student at Collins-Riverside Middle School with a 504 Plan is promoted to the ninth grade, his or her plan is delivered to Tuscaloosa County High School for implementation at that school.

22.    On May 9, 2017, Plaintiff delivered the 504 Plans for students moving from Collins-Riverside Middle School to Tuscaloosa County High School.

23.    In reviewing the 504 Plans received from Plaintiff, Tuscaloosa County High School personnel noticed that, although the Plans were delivered on May 9, the signature pages indicated that the meetings were held on May 24, fifteen days after they were delivered to Tuscaloosa County High School.

24.    Upon closer inspection, Tuscaloosa County High School Personnel noticed that the signature pages were photocopies of the same page and did not bear original signatures.

25.     Tuscaloosa County High School personnel notified the TCSS System 504 Coordinator of their discoveries.

26.     The System 504 Coordinator conducted an investigation into Plaintiff's 504 Plans.

27.     The investigation revealed various potential procedural and, possibly, substantive errors in the 504 Plans as well as the fact that Plaintiff had emailed confidential student records to her personal email account and that she had stored confidential student records on her personal computer or elsewhere in violation of TCSS policies.

28.     After the 504 Coordinator completed his investigation, Plaintiff was placed on Administrative Leave with Pay.

29.     A meeting was scheduled with Defendant Davie and Plaintiff to discuss the investigation and for Plaintiff to address the concerns.

30.     During the meeting, attended by Plaintiff, her AEA representative, Defendant Davie and Defendant Mays, Plaintiff admitted that she had modified the 504 team meeting notices; that she had photocopied the signature page and attached it to the 504 Plans and that she had delivered 504 Plans to Tuscaloosa County High

School fifteen days ahead of the meeting dates shown on the 504 Plans.

31.     Seven days after meeting with Plaintiff and her representative, Defendant Davie notified Plaintiff in writing of his intent to recommend to the Board that her employment be terminated.

32.     A due process hearing was held before the Board and evidence was presented in support of and in opposition of Defendant Davie's recommendation.

33.     Plaintiff was represented at the hearing by legal counsel.

34.     After the hearing was concluded, the Board deliberated and then voted to accept Defendant Davie's recommendation and terminated Plaintiff because of her 504 improprieties.

35.     The Board in its decision specifically found that Plaintiff falsified documents by photocopying other 504 team member signatures, without their knowledge or consent, on at least 18 legally binding 504 Plans and that such evidence clearly established a neglect of duty on Plaintiff's part.

36.     Plaintiff's prior conduct regarding alleged illegal acts by TCSS was not considered and was not a basis for the Board's decision.

37.     Pursuant to Alabama law, Plaintiff appealed the decision of the Board.

38.     Hon. Hugh Maddox, retired Alabama Supreme Court Justice was assigned as the hearing officer for Plaintiff's appeal.

39.     Justice Maddox upheld the decision of the Board.

40.     Plaintiff filed for unemployment compensation with the Alabama Department of Labor.

41.     The TCSS contested Plaintiff's unemployment compensation application.

42.     After a hearing, the hearing officer appointed by the Alabama Department of Labor determined that Plaintiff's termination was for cause and denied Plaintiff's application for unemployment compensation.

<u>DISCOVERY AND OTHER PRETRIAL PROCEDURES</u>:

a. Pretrial Discovery.

i.   X     Pursuant to previously entered orders of the court, discovery is closed except as follows.  On July 21, 2020, prior to the scheduled close of discovery, Defendants jointly moved the Court for leave to depose Plaintiff after the discovery cutoff deadline (Doc. 66). The Court granted Defendants' motion on July 27, 2020 (Doc. 69).

Following a discovery-related hearing, the Court entered an Order directing the parties to coordinate a time to take Plaintiff's deposition and that, conditioned upon Plaintiff providing discovery responses and the taking of her deposition, each Defendant will also make themselves available for their depositions (Doc. 70).  Due to illnesses and scheduling conflicts, those depositions have not yet been taken.

ii.  __X__    The parties are given leave to proceed the following discovery provided it is commenced in time to be completed by _____:

A.    The deposition of Plaintiff.

B.    Depositions of a representative or representatives of Defendant TCSS and of the former individual Defendants.  Defendant TCSS is not responsible for producing any former individual Defendant that Plaintiff wishes to depose who is no longer an employee of Defendant TCSS.

 b. Pending motions.

 None.

c.  Most evidentiary issues may be resolved through a stipulation of the parties, but the opposing parties have fundamental disagreements over what evidence does and does not constitute inadmissible hearsay.

Their disagreements may require evidentiary rulings at trial.  Plaintiff's

position is Defendant is precluded from calling the purported expert

witness Defendant identified as an expert witness because Defendant

never provided any expert witness report as required by the Scheduling

Order and Fed. R. Civ. P. 26.  Unless Defendant agrees, Plaintiff will

address this via a motion *in limine*.  Defendant submits that these

issues are for evidentiary ruling at trial and for a motion *in limine* and

are not appropriate for includion in a Pretrial Order.  A motion in

limine should be filed only if there is genuine disagreement.  Prior to

filing and motion in limine, moving counsel shall contact the opposing

counsel and determine if there will be opposition to the motion.  All

motions in limine shall include, in the caption under the case number, a

notation that the motion is "Opposed" or "Unopposed."  In addition,

the first paragraph SHALL briefly summarize the parties' attempt to

resolve the issue and set forth areas of agreement and disagreement.  If

the motion is opposed, the court will withhold ruling on the motion for

a period of three business days to permit opposing counsel time to

submit a response to the motion.  The court may enter a briefing

schedule for a particular motion which will supersede this general

schedule.  Motions in limine must be filed at least one week in advance

of the scheduled trial date and shall be accompanied by supporting memoranda.

MOTIONS IN LIMINE: Motions in limine must be filed at least one week in advance of the scheduled trial date and shall be accompanied by supporting memoranda.  As to each matter counsel seeks to exclude, counsel shall indicate whether the exclusion is "opposed" or "unopposed" by counsel for the other side.  Parties are encouraged to resolve evidentiary issues by stipulation whenever possible.

7. <u>TRIAL  (JURY)</u>:  At least ten business days prior to the scheduled trial date, the parties must file a **single, joint proposed jury charge**, including all necessary instructions, or definitions applicable to the specific issues of the case.  The parties need not submit standard generic instructions regarding routine matters; e.g., burden of proof, credibility of witnesses, duty of jurors,

a.   In joint, proposed jury materials, counsel are to include all necessary instructions or definitions, specifically including (1) the *prima facie* elements of each cause of action and defense asserted (Plaintiff's position is once a case of this type is submitted to the jury, then instructions on prima facie elements are not appropriate because the level of jury instructions rise (above the prima facie level) to a new

level – a level of whether there was unlawful retaliation.  Defendant's position is that this is an argument for a charging conference and is not appropriate in the Pretrial Order); (2) legal definitions required by the jury; (3) items of damages; and (4) methods of calculation of damages. Counsel are to use the 11th Circuit Pattern Jury Instructions, or appropriate state pattern jury instructions, as modified by case law or statutory amendments, wherever possible.  Any deviations must be identified, and accompanied with legal authorities for the proposed deviation.

b.   Even if the parties, in good faith, cannot agree on all instructions, definitions or questions, the parties should nonetheless submit a single, **unified** charge.  Each disputed instruction, definition, or question should be set out in bold type, underline or italics and identified as disputed.  Each disputed item should be labeled to show which party is requesting the disputed language.  Accompanying each instruction that deviates from pattern charges shall be all authority or related materials upon which each party relies. The parties shall also submit a copy as an e-mail submission to coogler_chambers@alnd.uscourts.gov.

c.   If the verdict form will include special interrogatories for the jury to answer, counsel shall include such special interrogatories with their proposed jury instructions.

9. <u>TRIAL DATE</u>.

a. This case is set for trial (jury ) on  <u>July 12, 2021</u>.

b. This case will be ready for trial on or after _____.

It is ORDERED that the above provisions be binding on all parties unless modified by further order for good cause shown.

**DONE** and **ORDERED** on June 10, 2021

_____
L. Scott Coogler
United States District Judge

173538